(No. 53969.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JACK D. SIMMONS, Appellant.

*Opinion filed November 20, 1981.—Rehearing denied January 29, 1982.*

MORAN, J., concurring in the judgment.

Robert Agostinelli, Deputy Defender, and Verlin R. F. Meinz, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

No appearance for appellee.

JUSTICE SIMON delivered the opinion of the court:

The defendant, Jack Simmons, was committed to the Illinois Department of Corrections for several felonies. After a time in a high-security prison, he was transferred to the Peoria Community Correctional Center. On November 10, 1977, he was allowed six hours of independent day release to go shopping. An employee of the Correctional Center drove him to a local shopping center and left him, unaccompanied. Simmons was required to call in every two hours; and his brother was to drive him back to the Center. Simmons called once, but not the second time, and never returned to the Center. He was eventually arrested in Davenport, Iowa, prosecuted in the circuit court of Vermilion County for escape, under section 31—6 of the Criminal Code of 1961, as amended (Ill. Rev. Stat. 1977, ch. 38, par. 31—6), and sentenced to three years' imprisonment, to commence at the end of the sentences he was already serving. The appellate court affirmed. 87 Ill. App. 3d 18.

The defendant contends that he could not properly be charged under section 31—6 of the Criminal Code of 1961, but only under section 3—6—4(a) of the Unified Code of Corrections, which provides:

"A committed person who escapes or attempts to escape from an institution or facility of the Adult Division [of the Department of Corrections] *** is guilty of a Class 2 felony. A committed person who fails to return from furlough or from work and day release is guilty of a Class 3 felony." (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—4(a).)

Under that section, the defendant maintains, he was guilty only of a Class 3 felony. Instead, he was convicted of a

Class 2 felony, under section 31—6, the escape provision of the Criminal Code of 1961, which provides:

"(a) A person convicted of a felony, or charged with the commission of a felony who intentionally escapes from any penal institution commits a Class 2 felony." (Ill. Rev. Stat. 1977, ch. 38, par. 31—6(a).)

Under another paragraph of this section, a person in custody for a misdemeanor commits only a misdemeanor if he escapes. Ill. Rev. Stat. 1977, ch. 38, par. 31—6(b).

The defendant raises three arguments in support of his position that he was charged under the wrong statute: What he did was not an "escape," but only a "failure to return"; the Correctional Center was not a "penal institution"; and the Unified Code of Corrections provides the specific and exclusive penalty for such conduct.

The Unified Code of Corrections defines "escape" as "intentional and unauthorized absence" of a committed person from the custody of the Department. (Ill. Rev. Stat. 1977, ch. 38, par. 1003—1—2(i).) Under that definition, the defendant's conduct was an escape. The definition does not expressly apply outside the Unified Code of Corrections. However, the legislature has given the word a similarly broad meaning in other statutes. Section 13—44.3 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 13—44.3) (authorizing educational furloughs from the Department of Corrections) and section 55a(13) of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1977, ch. 127, par. 55a(13)) (authorizing furloughs of inmates for use in research) both provide that failure to return from furlough or violation of the territorial limits of the furlough shall be deemed an escape from the custody of the Department of Corrections and punished under the statute dealing with escape from the penitentiary (Ill. Rev. Stat. 1971, ch. 108, par. 121, now merged into section 3—6—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—4)). We see

no reason why conduct that is considered an escape under the Unified Code of Corrections, the School Code, and a statute on the Department of Law Enforcement should not also be an escape for purposes of the Criminal Code of 1961.

A broad meaning for "escape" is consistent with the word's standard legal usage. At common law, the crime of escape required no force, and could be committed, for example, with the connivance of the jailer; it consisted simply of an unlawful departure from custody, or the act of a prisoner in gaining liberty before being released in due course of law. (27 Am. Jur. 2d *Escape, Prison Breaking, and Rescue* § 1 (1966).) And what the defendant did is a criminal escape according to the great weight of authority in other States (Annot., 76 A.L.R.3d 658 (1977)), including those with statutes similar to section 31—6(a) (*e.g., Days v. United States* (D.C. 1979), 407 A.2d 702; *Shifflett v. State* (1968), 4 Md. App. 227, 242 A.2d 182; *Commonwealth v. Hughes* (1973), 364 Mass. 426, 305 N.E.2d 117; *State v. Kiggins* (1972), 86 S.D. 612, 200 N.W.2d 243). Attributing a broad meaning to "escape" is also consistent with the word's ordinary usage. Webster's Third New International Dictionary, for example, gives as one meaning: "evasion of or deliverance from what confines, limits, or holds *** *specif*:an unlawful departure of a prisoner from the limits of his custody esp. when without prison breach ***."

The defendant was committed to the Department of Corrections and sent to the Peoria Community Correctional Center. However much the limits of his confinement were temporarily enlarged, or the restrictions on his conduct temporarily lessened, he was still legally in the custody of the Center, and had a legal duty to submit to that custody. When he exceeded the lawful limits of his liberty, whether by stepping across the invisible boundary around the shopping center or by standing still while the boundary, with the

passage of time, shrank to the physical confines of the Peoria Community Correctional Center itself, he escaped from the Center.

The Peoria Community Correctional Center is a penal institution. (*Cf. United States v. Venable* (D.C. 1974), 316 A.2d 857 (half-way house).) The defendant was confined there involuntarily as a *penalty* for a criminal offense; he was not free to leave except temporarily, with special permission, and on special conditions; and while at the Center, he was subject to multifarious restrictions on the personal liberties people ordinarily take for granted.

Section 2—14 of the Criminal Code of 1961 defines a penal institution as "a penitentiary, state farm, reformatory, prison, jail, house of correction, or other institution for the incarceration or custody of persons under sentence for offenses or awaiting trial or sentence for offenses." (Ill. Rev. Stat. 1977, ch. 38, par. 2—14.) The defendant argues that the listed institutions are all places of more secure confinement than the Peoria Community Correctional Center, and that under the principle of *ejusdem generis,* an "other institution" must be similarly secure to be a "penal institution." We do not see why the mechanics of confinement have any special significance. The obvious explanation for work-release centers, such as the institution the defendant absconded from, not being expressly mentioned in the definition of "penal institution" is that when the Criminal Code of 1961 was written, there were no such institutions. It was not until 1967 that the legislature authorized halfway houses and work-release centers. (1967 Ill. Laws 619-23.) We think the idea of a penal institution is broad enough to encompass new varieties as they are developed. (See *Commonwealth v. Hughes* (1973), 364 Mass. 426, 305 N.E.2d 117.) Nor does the temporary release of inmates from the Center detract from its status as a penal institution. Inmates may be furloughed from a penitentiary, unquestionably a penal institution.

If the Center were, as defendant argues, not a penal institution, neither would its counselors be employees of a penal institution. Thus, if an inmate escaped from a counselor's custody by knocking the counselor on the head and sprinting away, that would still not violate section 31—6(a) of the Criminal Code of 1961. We do not believe the legislature intended such an absurd result.

We also reject the defendant's contention that the Unified Code of Corrections provision is exclusive, so that a person who escapes from a facility of the Adult Division is immune from prosecution under the Criminal Code provision. There is no inconsistency between the two escape provisions, and no reason to read either as creating any exception to the other. They simply express different, but harmonious, legislative concerns. The Criminal Code of 1961 declares that escape is especially serious, a Class 2 felony as contrasted with a misdemeanor, if the escapee is a convicted or accused felon, as opposed to a misdemeanant. The Unified Code of Corrections declares that escape is especially serious, a special offense, if it is from a facility of the Adult Division of the State corrections department, as opposed to a local or juvenile facility. If the defendant had been committed to the Department of Corrections for a misdemeanor (a possible disposition under section 5—8—6(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—6(b))), his escape would nevertheless be a felony under the corrections code, and the defendant would no doubt now be urging the supremacy of section 31—6(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 31—6(b)), under which the escape would be only a misdemeanor. But we think the proper interpretation of the provisions found in the Criminal Code of 1961 and in the Unified Code of Corrections, read together, is that escape is especially serious if it is *either* by a felon *or* from the facilities of the Adult Division, around which the legislature chose to erect a special legal barrier to

escape. To vindicate all the interests that must be protected, the State must be able to prosecute under either statute as it chooses.

Even if the Criminal Code of 1961 were invariably more severe than the corrections code, the coexistence of the two statutes could be justified on the ground that the legislature wanted to give prosecutors and juries a choice. (See *People v. Brooks* (1976), 65 Ill. 2d 343.) We see no reason to depart from the general rule that where conduct violates two criminal statutes possessing different elements or defenses (here commitment for a felony under one statute or to the Adult Division under the other) the State is free to prosecute under whichever carries the greater penalty (*People v. Henderson* (1978), 71 Ill. 2d 53).

The Unified Code of Corrections sometimes reads as if no other escape provision existed. The defendant particularly calls our attention to section 3—13—4, which provides in part:

"(a) The Department shall establish rules governing release status * * *.

(b) If a committed person violates any rule, the Department may impose sanctions appropriate to the violation. The Department shall provide sanctions for unauthorized absences which shall include prosecution for escape under Section 3—6—4." (Ill. Rev. Stat. 1977, ch. 38, par. 1003—13—4.)

The defendant argues that this prohibits the State's Attorney from prosecuting escapes under the Criminal Code of 1961. Perhaps in passing and amending the corrections code, the legislature may not have had the Criminal Code consciously in mind. But that is not the same as an affirmative intent to repeal or limit the application of all other escape statutes. A focus on the Department of Corrections and a determination to achieve certain ends within that department does not imply that all other ends, such as the need to deter escapes by felons from any place where they are confined, are

abandoned. A statute (here section 31—6) does not vanish when the legislature does not refer to it at every opportunity, or makes passing mention of another, similar statute (here section 3—6—4) while discussing another subject (here administrative rules). Neither by express language nor as a necessary implication from the legislative purpose did the corrections code repeal or limit the Criminal Code's escape provision. It simply unified the separate escape provisions that had formerly existed, alongside the Criminal Code provision, for each of the State's major penal institutions.

The phenomenon of two escape statutes covering in some instances the same conduct did not originate with the corrections code but with the Criminal Code of 1961 itself. The Criminal Code of 1961 took anti-escape prohibitions that formerly applied only to jails, workhouses, and houses of correction (Ill. Rev. Stat. 1959, ch. 38, par. 228b), and expanded them to cover all penal institutions, specifically defined (Ill. Rev. Stat. 1977, ch. 38, par. 2—14) to include penitentiaries, state farms, and reformatories, while leaving intact the special escape provisions in statutes dealing with the penitentiary (Ill. Rev. Stat. 1961, ch. 108, par. 121), the state farm (Ill. Rev. Stat. 1961, ch. 118, par. 18), and the women's reformatory (Ill. Rev. Stat. 1961, ch. 23, par. 2807). To hold that the Criminal Code of 1961 did not apply to escapes from those institutions that had escape laws of their own would not only ignore the express definition of "penal institution" but would almost wipe out the change in the law the Criminal Code provision was designed to effect, namely expansion of the coverage to all institutions. Thus, before passage of the Unified Code of Corrections, an escapee could be prosecuted under either the Criminal Code of 1961 or the special statute dealing with the particular institution. As we have explained, we find nothing in the corrections code definite enough to convince us that the legislature intended any change in that policy.

The defendant's central theme, running through all his arguments, is that what he did was less dangerous than a classic escape from the penitentiary, and should therefore be punished less severely. It is true that some escapes may be punished more severely than others, under some statutory provisions, because of the danger of the escape process itself. For example, a misdemeanant who escapes while armed with a dangerous weapon commits a more serious offense than one who escapes more peacefully (Ill. Rev. Stat. 1977, ch. 38, par. 31—6(d)), and someone who escapes from the Adult Division is treated more severely than someone who escapes from a lesser institution, with a further distinction according to whether he climbed the wall or merely failed to return (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—4). But section 31—6(a) of the Criminal Code of 1961, dealing with escapes by felons, is not tailored to violence in the escape process. It treats all penal institutions the same, and escape with a gun as no worse than without. In fact, until recently, when armed escape was raised from a Class 4 to a Class 2 felony, a felon escaping peacefully was committing a worse offense than a misdemeanant escaping with guns blazing (Ill. Rev. Stat. 1977, ch. 38, pars. 31—6(a), (d)), which is obviously more dangerous. The point of section 31—6 is simply to protect against the danger of a felon freeing himself and roaming the world, evading his punishment, apart from how he does it. For the purpose of that legislative policy, we see no distinction between what the defendant did here and escape in a more exciting way.

We conclude, therefore, that the defendant was properly convicted of violating section 31—6 of the Criminal Code of 1961.

Simmons also complains that he was denied his right to counsel when the circuit court, upon being informed that the public defender representing the defendant had once been an assistant State's Attorney and had prosecuted the defendant, removed the attorney and appointed private

counsel. There is no claim in this court that the second attorney was inadequate and no explanation of how the first attorney could have done better. The appellate court properly held that the issue was waived because it was not included in the post-trial motion. *People v. Precup* (1978), 73 Ill. 2d 7.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE MORAN concurs in the judgment.