Docket No

 Docket No. 99501–Agenda 10–September 2005.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BENJAMIN CAMPA, Appellee.

Opinion filed December 1, 2005.

JUSTICE FREEMAN delivered the opinion of the court:

At issue is whether defendant, Benjamin Campa, received a speedy trial as required by section 103–5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103–5 (West 2000)). The appellate court held that he did not. 353 Ill. App. 3d 178. We granted the State’s petition for leave to appeal (177 Ill. 2d R. 315(a)). For the reasons that follow, we affirm the judgment of the appellate court.

BACKGROUND

Defendant was arrested on August 19, 2001, following a traffic accident. He was eventually charged with driving under the influence of alcohol (625 ILCS 5/11–501(a) (2) (West 2000)), driving without a license (625 ILCS 5/6–101 (West 2000)), and driving without insurance (625 ILCS 5/3–707 (West 2000)). At his arraignment on August 20, 2001, defendant filed a demand for a speedy trial in accordance with the speedy-trial provision of the Code of Criminal Procedure (725 ILCS 5/103–5 (West 2000)). The circuit court of Cook County set bail at $5,000, but defendant was unable to post the money required to make bail.

On August 21, 2001, the Cook County sheriff’s office placed defendant in its “Electronic Home Monitoring Program.” However, on September 5, 2001, the Cook County sheriff’s office transferred defendant to the Day Reporting Center. In connection with the transfer, defendant signed a document entitled “Agreement Governing Transfer to the Day Reporting Center.” The agreement specified certain terms and conditions for defendant’s participation in the Day Reporting Center program, including the requirements that defendant report to the Day Reporting Center as scheduled; attend all portions of the Day Reporting Center program; and abide by all program rules.
(footnote: 1) Lastly, the agreement warned that defendant’s failure to comply with the conditions contained therein “and any additional conditions shall result in the revocation of this agreement and return to the Cook County Department of Corrections.” During the time that defendant participated in the Day Reporting Center program, he reported to the Day Reporting Center
(footnote: 2) Monday through Friday from 8 a.m. until 1:30 p.m.

By agreement, the trial court scheduled defendant’s trial for December 21, 2001. On that day, the State represented to the court that the arresting officer was in court, but the State’s complaining witnesses were not. The State requested a continuance. Defense counsel made both an oral and a written demand for a speedy trial. Defense counsel informed the court that defendant was not free on bond, but had to report every day to the Day Reporting Center. Because the court indicated its willingness to reconsider the amount that had been set for defendant’s bail, defense counsel moved for a bond reduction. The court realized, however, that the court file on another DUI case pending against defendant was missing. The court then stated that it could not reduce the amount of bail without reviewing the other file. Although defense counsel insisted that he was ready to proceed to trial and demanded trial, the court continued the case to January 31, 2002. The court indicated on the court file that the complaining witness was not in court.

On January 31, 2002, the State indicated that it was not ready to proceed. Having filed a written demand for a speedy trial, defendant stated that he was ready for trial and that he was demanding trial. The trial court asked the State to check “term” and indicated that the trial would be set to “term.” The State requested that the court continue the case to May 3, 2002, and the court granted the continuance.

On May 3, 2002, defendant filed a petition for discharge pursuant to section 103–5(a) of the Code of Criminal Procedure (725 ILCS 5/103–5(a) (West 2000)). Defendant stated that he had been in continuous custody at the Cook County Department of Corrections through the Cook County sheriff’s Day Reporting Center program since the date of his arrest. Since he had not caused, contributed to, or acquiesced in any delay since December 21, 2001, and since more than 120 days had elapsed from that date to the date of trial, defendant maintained that he must be discharged.

At the hearing on the petition, defendant cited 
People v. Moss
, 274 Ill. App. 3d 77 (1995), as controlling authority. Pointing to the holding in 
Moss
 that a defendant on electronic home monitoring is in custody, defendant argued that he was likewise in custody. The State distinguished 
Moss
, arguing that electronic home monitoring is custody, but day reporting is not. The trial court agreed with the State. The court held that defendant was not in custody within the meaning of the speedy-trial provision and denied the petition for discharge.

At trial, the State presented the testimony of the arresting officer as its only evidence. Defendant did not call any witnesses and presented only the evidence elicited in cross-examination of the arresting officer. The court found defendant guilty of all charges.

Defendant filed a motion for a new trial, again arguing that he should have been tried within 120 days of December 21, 2001, because he was in custody and not on bail or recognizance. Defendant also argued that he was not proven guilty beyond a reasonable doubt. The trial court denied the motion. The court opined that the State had met its burden of proof beyond a reasonable doubt as to all the charges. On the speedy-trial challenge, the court ruled that defendant was not in custody and was properly tried within 160 days of his December 21, 2001, demand for trial. When defendant asked that the court make a finding as to whether defendant was on bail or recognizance, the court refused to do so. Instead, the court explained: “[W]hat I’m saying is that for purposes of the speedy trial demand, which would be made for someone who is in custody, that my finding is that because he was on daily reporting, he was not in custody for purposes of the Speedy Trial Act in determining and requiring the State to proceed to trial within 120 days. That’s my ruling. Okay.”

Subsequently, the court sentenced defendant to 24 months of supervision, and fines totaling $425 on the charge of driving under the influence of alcohol; supervision and a fine of $75 on the charge of driving without insurance; and supervision and a fine of $55 on the charge of driving without a license. The periods of supervision on the charge of driving without insurance and the charge of driving without a license were satisfied by the 15 days that defendant spent on electronic home monitoring.

The appellate court reversed. 353 Ill. App. 3d 178. Initially, the court rejected the State’s argument that the conditions placed on defendant as a result of his participation in the day reporting program were analogous to those imposed on a defendant on bail or recognizance, and, consequently, the 160-day limit of section 103–5(b) should apply. The court noted that the circuit court is responsible for either admitting a defendant to bail or placing him on recognizance. 353 Ill. App. 3d at 183. In the present case, “the trial court had no involvement in the decision to place defendant in the day reporting program. The decision was made entirely by the sheriff’s department, and the sheriff’s department alone determined the conditions of defendant’s ‘release’ into the program.” 353 Ill. App. 3d at 183. For this reason, the appellate court rejected “any suggestion that defendant was ‘on bail or recognizance’ within the meaning of the statute.” 353 Ill. App. 3d at 183.

The appellate court considered next defendant’s contention that he was “in custody” within the meaning of the speedy-trial provision. While recognizing that the conditions of day reporting noted above were far less onerous than physical confinement in the Cook County Department of Corrections, the court concluded that defendant was nevertheless in the custody of the sheriff’s department and “in custody” within the meaning of the speedy-trial statute. 353 Ill. App. 3d at 184. The court reasoned: “[I]t is unclear what legal recourse, if any, defendant would have had if the sheriff’s department had unilaterally decided that he was no longer eligible for the day reporting program or decided to discontinue the program entirely. Accordingly, we must conclude that defendant remained under the control of the sheriff’s department, which retained the power to imprison defendant. We are reluctant to find that the sheriff’s release of defendant, unauthorized by the trial court, circumvented the prophylactic effect of the 120-day rule.” 353 Ill. App. 3d at 184.

The appellate court found support for its holding in this court’s opinion in 
People v. Simmons
, 88 Ill. 2d 270 (1981), where 
a prisoner, who was allowed six hours of independent day release at a shopping center, was found to have escaped from a “penal institution” when he failed to return to prison as scheduled. 353 Ill. App. 3d at 184. The appellate court also relied on the holding in 
Moss
, 274 Ill. App. 3d at 82, that a defendant on electronic home detention was properly found guilty of possession of a controlled substance in a penal institution where he sold cocaine to an informant. 353 Ill. App. 3d at 184. The appellate court concluded that, for purposes of the speedy-trial statute, an individual may be “in custody” despite enjoying considerable freedom. 353 Ill. App. 3d at 184.

We granted the State leave to appeal. 177 Ill. 2d R. 315(a).

ANALYSIS

The State argues that the appellate court committed error in finding that defendant was in “custody” within the meaning of the speedy-trial statute. In Illinois, a defendant possesses both constitutional and statutory rights to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8; 725 ILCS 5/103–5 (West 2000). Although the constitutional and statutory provisions “address similar concerns ***, the rights established by each are not necessarily coextensive.” 
People v. Hall
, 194 Ill. 2d 305, 326 (2000) (citing 
People v. Kliner
, 185 Ill. 2d 81, 114 (1998), and 
People v. Jones
, 104 Ill. 2d 268, 286 (1984)). Under the constitutional provisions, “whether a defendant’s right to a speedy trial has been violated depends on such factors as the length of the delay in trial, the reasons for the delay, the defendant’s assertion of the speedy-trial right, and prejudice to the defendant caused by such delay.” 
People v. Staten
, 159 Ill. 2d 419, 426 (1994), citing 
Barker v. Wingo
, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 116-17, 92 S. Ct. 2182, 2192 (1972). Under the statutory provision, proof of a violation “requires only that the defendant has not been tried within the period set by statute and that the defendant has not caused or contributed to the delays.” 
Staten
, 159 Ill. 2d at 426, citing 
People v. Richards
, 81 Ill. 2d 454, 459 (1980). In the present case, defendant asserts only a violation of his statutory right to a speedy trial.

The speedy-trial statute provides in part:

“(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record.

***

(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant ***. ***

* * *

(d) Every person not tried in accordance with subsections (a), (b) and (c) of this Section shall be discharged from custody or released from the obligations of his bail or recognizance.” 725 ILCS 5/103–5 (West 2000).

In examining these statutory provisions, this court has held that when a defendant remains in custody, the 120-day statutory period begins to run automatically from the day the defendant is taken into custody. The defendant need not make a formal demand for trial to come within the purview of the statute. 
People v. Mayo
, 198 Ill. 2d 530, 536 (2002). Contrarily, a defendant who is on bail or recognizance must be tried by the court within 160 days from the date the defendant demands trial. 725 ILCS 5/103–5(b) (West 2000). The duty is upon the State to bring the defendant to trial within the applicable statutory period. 
Mayo
, 198 Ill. 2d at 536 (citing 
People v. Turner
, 128 Ill. 2d 540, 550 (1989), and 
Jones
, 104 Ill. 2d at 274). If the State fails to do so, the defendant is entitled to have the charges against him dismissed. 725 ILCS 5/103–5(d) (West 2000); 
Kliner
, 185 Ill. 2d at 114-15. The statute is to be liberally construed so as to give effect to the constitutional right to a speedy trial. 
Mayo
, 198 Ill. 2d at 536; 
People v. Brown
, 92 Ill. 2d 248, 258 (1982); 
People v. Pearson
, 88 Ill. 2d 210, 216 (1981).

The parties are in agreement that more than 120 days elapsed, without delay attributable to defendant, between December 21, 2001, the date when defendant objected to a continuance requested by the State and made a written demand for trial, and May 3, 2002, the date of the trial. Thus, our consideration of defendant’s speedy-trial challenge does not involve review of a determination by the trial court as to whether a delay is attributable to defendant or the State. Rather, our resolution of the speedy-trial issue depends on a determination as to which subsection of the statute applies to defendant. If defendant was in “custody” within the meaning of the statute, he was entitled to be discharged. If defendant was “on bail or recognizance” within the meaning of the statute, his trial was timely. The issue is one of statutory interpretation, and our review is 
de novo
. 
People v. Cosenza
, 215 Ill. 2d 308, 314 (2005);
 Staten
, 159 Ill. 2d at 427.

The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature. 
People v. Maggette
, 195 Ill. 2d 336, 348 (2001);
 People v. Pullen
, 192 Ill. 2d 36, 42 (2000). That inquiry appropriately begins with the language of the statute. 
People v. Woodard
, 175 Ill. 2d 435, 443 (1997), citing 
People v. Hare
, 119 Ill. 2d 441, 447 (1988). We afford the language of the statute its plain and ordinary meaning (
Pullen
, 192 Ill. 2d at 42; 
Brown
, 92 Ill. 2d at 256) and construe the statute as a whole (
People v. Jones
, 211 Ill. 2d 140, 147 (2004); 
Maggette
, 195 Ill. 2d at 348
). We do not view words and phrases in isolation but consider them in light of other relevant provisions of the statute. 
Maggette
, 195 Ill. 2d at 348; 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 504 (2000).

In order to resolve the issue at bar, we consider first whether defendant was in “custody” within the meaning of section 103–5(a) of the speedy-trial statute. Initially, we note that the general definitions section of the Code of Criminal Procedure does not contain a definition of the word “custody.” See 725 ILCS 5/102–1 
et seq
. (West 2000). Section 102–2 of the Code (725 ILCS 5/102–2 (West 2000)) refers the reader to the Criminal Code of 1961 for descriptions of words or phrases not otherwise defined in the Code of Criminal Procedure. Looking to the definitions section of the Criminal Code, however, the word “custody” is not amongst the terms defined. In the absence of a specific definition of the word “custody,” we assume that the legislature intended the word to have its ordinary and popularly understood meaning. See 
Maggette
, 195 Ill. 2d at 349, citing 
People v. Sheehan
, 168 Ill. 2d 298, 306 (1995).

Webster’s Third New International Dictionary defines “custody” as “judicial or penal safekeeping: control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it: imprisonment or durance of persons or charge of things.” Webster’s Third New International Dictionary 559 (1993). Black’s Law Dictionary defines “custody” in general as “[t]he care and control of a thing or person for inspection, preservation, or security.” Black’s Law Dictionary 412 (8th ed. 2004). Black’s Law Dictionary further defines and distinguishes between the terms “physical custody” and “constructive custody.” The term “physical custody” is defined as “[c]ustody of a person (such as an arrestee) whose freedom is directly controlled and limited.” Black’s Law Dictionary 1183 (8th ed. 2004). The term “constructive custody” is defined as “[c]ustody of a person (such as a parolee or probationer) whose freedom is controlled by legal authority but who is not under direct physical control.” Black’s Law Dictionary 412 (8th ed. 2004).

The appellate court referenced commentary in an earlier edition of Black’s Law Dictionary that “ ‘The term [custody] is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession.’ ” 353 Ill. App. 3d at 182, quoting Black’s Law Dictionary 347 (5th ed. 1979). The appellate court believed that the legislature intended to adopt the “elastic meaning when it used the term ‘custody’ in the speedy-trial statute.” Consequently, the court held that, while participating in the Day Reporting Center program, defendant remained in the custody of the sheriff’s department and “in custody” within the meaning of the speedy-trial statute. 353 Ill. App. 3d at 182-85. Upon examination of various provisions of the Code of Criminal Procedure, review of case law interpreting those provisions, and reference to the dictionary definitions cited above, we agree with the appellate court that the legislature did not intend that the term “custody,” as it is used in the speedy-trial statute, be equated to confinement. Rather, we believe that the legislature intended the term “custody” to have a broad meaning and encompass lesser forms of restraint than confinement. The legislature intended that the term “custody” evolve with the changing programs in our correctional institutions.

Like the appellate court, we are aware that the conditions of the Day Reporting Center program are not as onerous as the conditions of confinement in a correctional institution. Nevertheless, the Day Reporting Center program is a form of restraint that falls within the broad meaning of the term “custody.” The basic concept of the Day Reporting Center program is to acclimate the participant to the daily routine of reporting to a strictly supervised environment, where he is expected to adhere to a schedule and engage in productive activities. Every participant in the program is subject to mandatory daily attendance and drug testing. We note that a participant’s attendance is not limited to a brief “check-in” at a center. Instead, the participant must spend at least three hours and possibly as many as nine hours at the center each day. Any offender who fails to adhere to the rules of the program is reincarcerated.

We conclude that, as a participant in the Day Reporting Center program, defendant was in the “custody” of the Cook County Department of Corrections and the Department of Community Supervision and Intervention. Significant restraints were placed on defendant’s liberty. Defendant reported to a jail facility on a daily basis. Monday through Friday, he was expected to be at the facility from 8 a.m. until 1:30 p.m.

We find support for our construction of the speedy-trial statute in previous decisions of this court reviewing the meaning of the terms “custody” and “escape” within the context of the Criminal Code. In 
Simmons
, 88 Ill. 2d 270, the court considered whether a defendant on independent day release had escaped from custody. The defendant was committed to the Illinois Department of Corrections for several felonies and eventually transferred to the Peoria Community Correctional Center. While at the Correctional Center, he was allowed six hours of independent day release to go shopping. An employee of the Correctional Center drove him to a local shopping center and left him, unaccompanied. The defendant was to call in every two hours and his brother was to drive him back to the Center. The defendant called once and never returned to the Center. He was eventually arrested in Iowa and prosecuted for escape under section 31–6 of the Criminal Code. Ill. Rev. Stat. 1977, ch. 38, par. 31–6 (now 720 ILCS 5/31–6 (West 2004)).
(footnote: 3)
 On appeal, the defendant contended that he could not properly be charged under section 31–6 of the Criminal Code. He maintained that what he did was not an “escape,” but only a “failure to return.” Further, he argued that the Correctional Center was not a “penal institution” from which he could escape. The court rejected the defendant’s arguments. Initially, the court observed that a broad meaning for the word “escape” was consistent with both the word’s standard legal usage and the word’s ordinary usage. The court noted that, at common law, “the crime of escape required no force, and could be committed, for example, with the connivance of the jailer; it consisted simply of an unlawful departure from custody, or the act of a prisoner in gaining liberty before being released in due course of law.” 
Simmons
, 88 Ill. 2d at 273. The court also referenced the definition of “escape” in Webster’s Third New International Dictionary as the “ ‘evasion of or deliverance from what confines, limits, or holds *** 
specif
: an unlawful departure of a prisoner from the limits of his custody esp. when without prison breach ***.’ ” 
Simmons
, 88 Ill. 2d at 273.

The court held that defendant had escaped from the custody of a penal institution. The court reasoned,

“The defendant was committed to the Department of Corrections and sent to the Peoria Community Correctional Center. 
However much the limits of his confinement were temporarily enlarged, or the restrictions on his conduct temporarily lessened, he was still legally in the custody of the Center, and had a legal duty to submit to that custody.
 When he exceeded the lawful limits of his liberty, whether by stepping across the invisible boundary around the shopping center or by standing still while the boundary, with the passage of time, shrank to the physical confines of the Peoria Community Correctional Center itself, he escaped from the Center.” (Emphasis added.) 
Simmons
, 88 Ill. 2d at 273-74.

In the court’s view, “the mechanics of confinement” did not “have any special significance. The obvious explanation for work-release centers, such as the institution the defendant absconded from, not being expressly mentioned in the definition of ‘penal institution’ is that when the Criminal Code of 1961 was written, there were no such institutions. It was not until 1967 that the legislature authorized halfway houses and work-release centers. [Citation.]” 
Simmons
, 88 Ill. 2d at 274. The court concluded, “the idea of a penal institution is broad enough to encompass new varieties as they are developed. [Citation.] Nor does the temporary release of inmates from the Center detract from its status as a penal institution. Inmates may be furloughed from a penitentiary, unquestionably a penal institution.” 
Simmons
, 88 Ill. 2d at 274.

In 
People v. Marble
, 91 Ill. 2d 242 (1982), the court revisited the issue of escape from a penal institution. Defendant Marble was serving a term of imprisonment with a provision for work release at the Chicago Work Release Center of the Cook County Department of Corrections in the Cook County jail. He was allowed to leave the Cook County jail on work release with the requirement that he return by 8 p.m. He failed to return. Defendant Cole was at the Peoria Community Correctional Center serving a term on work release for burglary. He was allowed to leave the Center on work release on a Friday. Normally, he would have been required to return that evening, but he was given unescorted furlough leave until the Monday morning. While reporting by telephone to the Center, Cole was told that he had violated conditions of his work release and that he had to return immediately. He failed to return and was apprehended 14 months later. Following the reasoning of 
Simmons
, the court held both Marble and Cole were properly convicted of violating section 31–6(a) of the Criminal Code. The court considered the Peoria Community Correctional Center and the Chicago Work Release Center of the Cook County Department of Corrections to be penal institutions.

Shortly after the court’s opinions in 
Simmons
 and 
Marble
, the legislature amended the Criminal Code to confirm that the failure to return from furlough or from work and day release constitutes escape. As amended, section 31–6 of the Criminal Code provided in part:

“Escape. (a) A person convicted of a felony, or charged with the commission of a felony who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony; however, a person convicted of a felony or charged with the commission of a felony who knowingly fails to return from furlough or from work and day release is guilty of a Class 3 felony.

(b) A person convicted of a misdemeanor or charged with the commission of a misdemeanor who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class A misdemeanor; however, a person convicted of a misdemeanor or charged with the commission of a misdemeanor who knowingly fails to return from furlough or from work and day release is guilty of a Class B misdemeanor.

(c) A person in the lawful custody of a peace officer who intentionally escapes from custody commits a Class A misdemeanor.” Ill. Rev. Stat. 1983, ch. 38, par. 31–6.

Three additional amendments of section 31–6 are relevant to our analysis. In 1985, the legislature amended the statute to provide that the failure to report for imprisonment constitutes escape. In the second clauses of subsection (a) and subsection (b), the legislature substituted the words “who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to” for the words “or charged with the commission of a felony who knowingly fails to.” Ill. Rev. Stat. 1985, ch. 38, par. 31–6. By amendment effective January 1, 1997, the legislature provided that the failure “to abide by the terms of home confinement” constitutes escape. 720 ILCS 5/31–6 (West 1998). Lastly, the legislature rewrote subsection (c) of the statute to provide that “[a] person in the lawful custody of a peace officer for the alleged commission of a felony offense and who intentionally escapes from custody commits a Class 2 felony; however, a person in the lawful custody of a peace officer for the alleged commission of a misdemeanor offense who intentionally escapes from custody commits a Class A misdemeanor.” 720 ILCS 5/31–6(c) (West 1998).

Since escape is the unauthorized departure from custody (
Simmons
, 88 Ill. 2d at 272-73), a defendant cannot escape unless he is first in custody. Thus, reference to the escape provision of the Criminal Code, and the amendments thereto, supports our construction of the term “custody” as used in the speedy-trial statute. The escape statute shows that the legislature intended the crime of escape to evolve with the changing terms of detention used as part of the programs at our correctional institutions. A defendant must necessarily be in “custody” while participating in these programs if he is to be held accountable for “escape” for failure to comply with the terms of the programs.

Notwithstanding the above, citing 
People ex rel. Morrison v. Sielaff
, 58 Ill. 2d 91 (1974), and 
People v. Ramos
, 138 Ill. 2d 152 (1990), the State suggests we hold that a defendant is in “custody” only when confined in a prison or jail. Both cases are inapposite. In 
Morrison
, the petitioner was arrested and shortly thereafter released on bail. Following his conviction, he was sentenced to a term of one to three years in prison. He sought to have the period of nearly five months when he was released on bail applied as a sentence credit. In rejecting the petitioner’s request, the court first considered the meaning of the term “custody” as used in the Unified Code of Corrections. The court noted that the Unified Code of Corrections does not specifically define the term “custody.” 
Morrison
, 58 Ill. 2d at 93. However, “[a]rticle 8 of chapter V of the Unified Code of Corrections contains several provisions in which the term ‘custody’ necessarily must be construed as relating to confinement.” 
Morrison
, 58 Ill. 2d at 93. The court next considered the provisions for bail in the Code of Criminal Procedure. The court noted that “bail is defined as the security necessary to release a person from ‘custody.’ ” 
Morrison
, 58 Ill. 2d at 94. Further, if a person forfeits his bond, he may “not be bailable on the same felony charge after he is subsequently taken into ‘custody.’ ” 
Morrison
, 58 Ill. 2d at 94. The court concluded that the term “custody” as used in the Unified Code of Corrections is not synonymous with the term “bail” as used in the Code of Criminal Procedure. 
Morrison
, 58 Ill. 2d at 94. The petitioner was not entitled to the sentence credit because he was not in “custody” during the period of time that he was released on bail. 
Morrison
, 58 Ill. 2d at 94.

In 
Ramos
, 138 Ill. 2d 152, the defendant was released from custody under a $50,000 recognizance bond. As a condition of the bond, the defendant was not to leave his residence unless he first obtained permission to do so from either his probation officer or the court. The trial court sentenced the defendant to a term of four years’ imprisonment, and denied his request that his sentence be reduced by the days that he spent in home confinement following his release on bond. On appeal, the court reaffirmed the ruling in 
Morrison
 “that the term ‘custody,’ as it is used in the credit-against-sentence provision of section 5–8–7(b), ‘does not include the period of time during which the defendant was released on bail but is predicated upon his confinement.’ ” 
Ramos
, 138 Ill. 2d at 158, quoting 
Morrison
, 58 Ill. 2d at 94. The court went on to hold “the legislature intended in section 5–8–7(b) of the Unified Code of Corrections to distinguish between defendants who are in custody and those who are released on bond, subject to the conditions of the bond. We therefore cannot conclude that the term ‘custody,’ as it is used in section 5–8–7(b), was intended to encompass the period of time during which a defendant is released on bond, regardless of the restrictions that might be imposed on him during that time.” 
Ramos
, 138 Ill. 2d at 160.

We decline the State’s invitation to apply the reasoning of 
Morrison
 and 
Ramos
 in the present context. Both 
Morrison
 and 
Ramos
 involved a defendant who was admitted to bond. This is a distinction of note since, hereinafter, we hold that defendant was not on bail or recognizance while participating in the Day Reporting Center program. Further, both 
Morrison
 and 
Ramos
 involved the meaning of the term “custody” as used in the credit-against-sentence provision of the Unified Code of Corrections. The court carefully limited the opinions 
to the context of the Unified Code of Corrections. See 
Morrison
, 58 Ill. 2d at 93-94; 
Ramos
, 138 Ill. 2d at 158-62.

Turning to the language of the speedy-trial statute, and, in particular, the use of term “recognizance,” the State argues that a pretrial detainee who is released from the Cook County Department of Corrections by the Cook County sheriff is released on his own “recognizance” and is therefore subject to the 160-day provision of the statute. Again, we disagree.

The Code of Criminal Procedure provides structure for the release of a defendant on bail or recognizance. Section 102–6 of the Code defines bail as

“the amount of money set by the court which is required to be obligated and secured as provided by law for the release of a person in custody in order that he will appear before the court in which his appearance may be required and that he will comply with such conditions as set forth in the bail bond.” 725 ILCS 5/102–6 (West 2000).

Section 109–1(b)(4) provides that the judge shall “[a]dmit the defendant to bail in accordance with the provisions of Article 110 of this Code.” 725 ILCS 5/109–1(b)(4) (West 2000). In turn, section 110–4 of article 110 defines a bailable offense, and section 110–5 provides for the determination of the amount of monetary bail or conditions of release. See 725 ILCS 5/110–4, 110–5 (West 2000). Lastly, section 110–6 provides that “the court before which the proceeding is pending may increase or reduce the amount of bail or may alter the conditions of the bail bond or grant bail where it has been previously revoked or denied.” 725 ILCS 5/110–6 (West 2000).
(footnote: 4) We note that a violation of the bail bond is punishable as a separate offense under section 32–10 of the Criminal Code (720 ILCS 5/32–10 (West 2000)).

Section 102–19 of the Code of Criminal Procedure contains the definition of recognizance. It provides,

“ ‘Recognizance’ means an undertaking without security entered into by a person by which he binds himself to comply with such conditions as are set forth therein and which may provide for the forfeiture of a sum set by the court on failure to comply with the conditions thereof.” 725 ILCS 5/102–19 (West 2000).

And section 110–2 provides when it is appropriate for the court to release a defendant on recognizance:

“Release on own recognizance. When from all the circumstances the court is of the opinion that the defendant will appear as required either before or after conviction and the defendant will not pose a danger to any person or the community and that the defendant will comply with all conditions of bond, which shall include the defendant’s current address with a written admonishment to the defendant that he or she must comply with the provisions of Section 110–12 of this Code regarding any change in his or her address, the defendant may be released on his or her own recognizance. *** A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in Section 32–10 of the ‘Criminal Code of 1961’ *** for violation of the bail bond, and any obligated sum fixed in the recognizance shall be forfeited ***.” 725 ILCS 5/110–2 (West 2000).

In the present case, the trial court did not release defendant on his own recognizance. Rather, the trial court determined that defendant should be released on bail of $5,000. Defendant was unable to post the money required for his release. When informed at the hearing on December 21, 2001, that defendant was unable to raise the funds to post bail, the trial court indicated a willingness to review the amount of bail. However, the court file on a related case against defendant was missing. The trial court stated that it could not reduce bail without reviewing the other file.

Contrary to the plain language of these statutory provisions, the State would have us hold that the sheriff of Cook County may release a defendant on his or her own recognizance even though the trial court has declined to do so and has set bail for the defendant. In support, the State notes that the speedy-trial statute does not specify that a court is the only authority that may release a defendant on bail or recognizance. While it is true that the speedy-trial statute does not specify that a sheriff may not release a defendant on bail or recognizance, the statute must be read in conjunction with the provisions of the Code of Criminal Procedure related to bail and recognizance. The definitions of bail and recognizance noted above, and the statutory framework provided for the release of a defendant on bail or recognizance, leave no doubt that the trial court is responsible for setting and modifying bail and releasing a defendant on his or her own recognizance.

The State also contends that the statutory definition of “recognizance” is not restricted to court action. The State argues:

“The basic definitional statement: ‘An undertaking without security entered into by a person by which he binds himself to comply with such conditions as are set forth therein,’ contains no reference to the party to whom the defendant ‘binds himself.’ It is only in the second clause that the ‘court’ becomes a necessary actor–‘
and
 which 
may
 provide for the forfeiture of a sum,’ if indeed, one were set by the trial court.” (Emphasis in original.)

The State concludes that “[w]hile the court ‘may provide for the forfeiture of a sum set by the court on a failure to comply with the conditions thereof,’ this is clearly a disjunctive clause that does not act to limit the basic definition of recognizance.”

We must decline the State’s invitation to read the “and” in the statutory definition of recognizance as an “or.” Even if we were to do so, however, we could not ignore section 110–2 of the Code of Criminal Procedure. The section provides that a defendant may be released on his or her own recognizance “[w]hen from all the circumstances 
the court
 is of the opinion that the defendant will appear as required either before or after conviction and the defendant will not pose a danger to any person or the community and that the defendant will comply with all conditions of bond.” (Emphasis added.) 725 ILCS 5/110–2 (West 2000).

Next, the State argues that a release by the sheriff of Cook County is no different than a release by the trial court, given that “the conditions of release are equivalent.” Whether a sheriff adopts conditions for its programs that are similar to the conditions that the trial court may impose upon a defendant in the bail bond is not controlling, however. Certainly, a sheriff cannot substitute his or her authority for that of the trial court merely by holding a defendant to conditions similar to those a court may impose.

Turning from the statutory language, the State notes that the sheriff of Cook County is authorized to release pretrial detainees on recognizance under the terms of a federal consent decree. See 
Duran v. Elrod
, 713 F.2d 292 (7th Cir. 1983). The State argues the federal district court has thus “defined” the term recognizance and that definition must prevail, lest the courts of this state violate the supremacy clause. U.S. Const., art. VI. The State concludes that the “authority” given the sheriff of Cook County under the terms of the federal consent decree cannot be countermanded by state law.

The federal district court entered the consent decree at issue in a class action filed by pretrial detainees in the custody of the Cook County Department of Corrections. The pretrial detainees alleged that the administrators of the Cook County jail violated their rights under the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) by failing to provide safe and humane conditions of confinement. After extensive discovery and negotiations, the parties entered into the decree at issue, which called, in part, for the renovation and modernization of the county jail facilities and the appointment of a monitor to review and evaluate the implementation of the consent decree. Faced subsequently with a report from the monitor that the goals outlined in the consent decree had not been achieved, the federal district court ordered a cap on the population of the Department of Corrections at 4,500 inmates and called for the parties to submit criteria for the release of inmates in order to reach the cap. When county officials failed to submit any release criteria, the district court ordered that if compliance with the consent decree “requires a reduction in inmate population at the [Department of Corrections] at any time after April 15, 1983 and if no Illinois state court of competent jurisdiction has then specified a different method of selecting the persons to be released to accomplish such reduction, Sheriff Elrod and Director Hardiman are directed to release on their own recognizance the persons held in default of the lowest amount of bail, and among persons held on the same amount of bail the ones who have been confined for the longest time.” 
Duran
, 713 F.2d at 294. The low-bond detainees, those held on bond of $500 or less, averaged over 800 inmates in the county facilities from August to November 1982 and represented 60% of the increase in the jail population in 1982. 
Duran
, 713 F.2d at 298.
(footnote: 5)
 We are not at all persuaded that the district court’s reference to the word “recognizance” in the consent decree must be given precedential value in the context at bar. This more so when neither the district court nor the court of appeals was asked to consider any issue related to the speedy-trial statute. We note that in choosing the criteria for implementation of the population cap, the district court did not foreclose other avenues for alleviation of the overcrowding at the county facilities and improvement of the conditions of confinement. Indeed, the district court stated that its “order leaves the primary and direct responsibility with the state court judiciary, where both the litigants and this Court agree it belongs.” 
Duran
, 713 F.2d at 294. “The March 22 Opinion and Order clearly indicated that the district court was aware of, and sensitive to, the need to strike a proper balance between the integrity of the Consent Decree and the principles of federalism. *** The district court, when it set the ‘cap,’ clearly left to the appropriate state and county agencies the determination of the means to reach the population ‘cap.’ ” 
Duran
, 713 F.2d at 297.

We also fail to see the relevance of the supremacy clause to the consideration of the issue at bar. Under subsection (a) of the speedy-trial statute, a defendant who has not caused or contributed to delays must be tried within 120 days from the date he was taken into custody. 725 ILCS 5/103–5(a) (West 2000). Under subsection (b) of the statute, a defendant who has not caused or contributed to delays must be tried within 160 days from the date the defendant demands trial. 725 ILCS 5/103–5(b) (West 2000). To the extent that the goal of the consent decree and the district court’s subsequent orders implementing the population cap is to alleviate overcrowding at the county facilities, it would seem best to bring the detainees to trial within the shorter period of time provided by statute rather than the longer period of time. The pretrial detainees will either be found not guilty and released from the county facilities or be found guilty and committed to the Illinois Department of Corrections. Either result would lessen the pressure of overcrowding at the county facilities. In our opinion, a requirement that participants in the Day Reporting Center program are brought to trial within the shorter statutory period does no violence to the consent decree.

Next, the State advances an equal protection argument in support of its position. The State maintains “[t]he appellate court’s holding in this case has resulted in a glaring dichotomy with potential equal protection implications–the establishment of two classes of defendants identically situated yet subject to different provisions of the Speedy Trial Act.” Defendant responds that the State has not satisfied the threshold requirement for alleging an equal protection claim. Defendant notes that the equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people. Defendant asserts that “the State has failed to demonstrate that the two groups of pre-trial defendants are similarly situated, let alone, as claimed by the State, ‘identically situated.’ ”

We need not review the differences between a defendant who has been released on bail by the trial court and a defendant who is participating in a Day Reporting Center program. The State “is not aggrieved by the alleged deprivation of equal protection and consequently lacks standing to raise this issue.” 
People v. Boykin
, 94 Ill. 2d 138, 147 (1983). “One who would attack a statute as unconstitutional must bring himself within the class as to whom the law is unconstitutional.” 
People v. Bombacino
, 51 Ill. 2d 17, 20 (1972), citing 
City of Chicago v. Lawrence
, 42 Ill. 2d 461 (1969); 
People v. Hanke
, 389 Ill. 602 (1945); 
Edelen v. Hogsett
, 44 Ill. 2d 215 (1969).

Having rejected the arguments advanced by the State with respect to the Day Reporting Center program, we turn to a related argument on electronic home monitoring. The State maintains that a “pre-trial detainee who is released on electronic home monitoring” is not in “custody” for purposes of the speedy-trial statute and the credit-against-sentence provision of the Unified Code of Corrections. The State admits that the “issue of whether or not pre-trial electronic monitoring constitutes ‘custody’ was not raised on appeal” but argues that consideration of the question is warranted.

For several reasons, we will not address the issue on the merits. First, the appellate court’s reference to electronic home monitoring was not a part of the holding of the case. The court merely noted, in the background section of its opinion, that the parties did not “dispute that defendant was ‘in custody’ for a period of 15 days while on electronic home monitoring.” 353 Ill. App. 3d at 179.
(footnote: 6) Second, in filing its petition for leave to appeal, the State failed to comply with Supreme Court Rules 315 and 341 (177 Ill. 2d R. 315; 188 Ill. 2d R. 341). These rules require that a party raise arguments and provide citation to legal authority or to the record in the petition for leave to appeal. Failure to comply with Rules 315 and 341 results in waiver. 
People v. Carter
, 208 Ill. 2d 309, 318 (2003). Third, whether defendant was in “custody” during the 15-day period of electronic home monitoring is not essential to the resolution of the speedy-trial issue. When we subtract the 15 days from the total time not attributable to defendant, we are left comfortably above the 120-day period of subsection (a) of the speedy-trial statute. As a general rule, a court of review will not decide moot or abstract questions or render advisory opinions. 
Barth v. Reagan
, 139 Ill. 2d 399, 419 (1990). A decision is an advisory opinion if it cannot result in appropriate relief to the prevailing party. 
In re Barbara H.
, 183 Ill. 2d 482, 490-91 (1998); 
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 8 (1997). A court of review “also ordinarily will not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided.” 
Barth
, 139 Ill. 2d at 419.

CONCLUSION

For the aforementioned reasons, we affirm the judgment of the appellate court.

Appellate court judgment affirmed.

FOOTNOTES
1:     
1
The appellate court opinion quotes the agreement in its entirety. 353 Ill. App. 3d at 179-80.

2:     
2
Both at the hearing on the petition for discharge pursuant to the speedy-trial statute and at the hearing on sentencing, the assistant public defender identified the Cook County jail as the location where defendant was required to report.

3:     
3
The statute provided in part:

“(a) A person convicted of a felony, or charged with the commission of a felony who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony.

(b) A person convicted of a misdemeanor or charged with the commission of a misdemeanor who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class A misdemeanor.

(c) A person in the lawful custody of a peace officer who intentionally escapes from custody commits a Class A misdemeanor.” Ill. Rev. Stat. 1977, ch. 38, par. 31–6.

4:     
4
See also 
People ex rel. Hemingway v. Elrod
, 60 Ill. 2d 74 (1975), and 
People v. Bailey
, 167 Ill. 2d 210 (1995), discussing the right to bail under section 9 of article I of the Illinois Constitution of 1970 and the court’s inherent power to deny bail. 

5:     
5
Because the trial court set defendant’s bail at $5,000, defendant would not have qualified as a low-bond detainee as contemplated by the federal district court in its March 22 release order. As the number of people charged with crime in Cook County continued to grow, however, the administrators of the Cook County jail began to release detainees with higher bail, including detainees awaiting trial on felony charges. This led to a number of accused felons becoming fugitives and a modification of the district court’s orders to allow double bunking. See 
Duran v. Elrod
, 760 F.2d 756 (7th Cir. 1985). 

6:     
6
The reference to electronic home monitoring may have been based on a concession in the State’s appellate brief. According to defendant, in its appellate brief the State observed that “ ‘157 [nonexcludable] days elapsed between the time [defendant] demanded trial and his trial took place.’ ” We also note that in the trial court the State argued that electronic home monitoring is custody.