# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Rogers*, 2012 IL App (1st) 102031

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEVON ROGERS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-2031 |
| Filed | June 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Double jeopardy barred the retrial of a defendant convicted of escape under the electronic home detention law, where he failed to appear at a day reporting program but the State introduced no evidence establishing that participation in the reporting program was a condition of electronic home monitoring and the jury was improperly instructed that a failure to appear at the reporting program constituted escape. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-2830; the Hon. Stanley Sacks, Judge, presiding. |
| Judgment | Reversed; conviction vacated. |

Counsel on Appeal          Michael J. Pelletier, Alan D. Goldberg, and Linda Olthoff, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People.

Panel          JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justice Harris concurred in the judgment and opinion.
Presiding Justice Quinn dissented, with opinion.

## OPINION

¶ 1      This is an appeal from defendant's conviction for the offense of escape under section 5-8A-4.1 of the Unified Code of Corrections (730 ILCS 5/5-8A-4.1 (West 2008)), also known as the Electronic Home Detention Law. Defendant was indicted on that charge after he failed to appear at the Cook County Sheriff's Day Reporting Center program (Day Reporting program). He argues that the circuit court erroneously instructed the jury that a failure to appear at the Day Reporting program constituted escape under section 5-8A-4.1. He contends that the State introduced no evidence to establish that a failure to participate in the Day Reporting program was a violation of the Electronic Home Detention Law. For the following reasons, we reverse and vacate defendant's conviction.

¶ 2                          I. BACKGROUND

¶ 3                            A. Facts

¶ 4      In January of 2010, defendant Devon Rogers (also appearing in the record as "Rodgers") pled guilty to aggravated battery in a public place (720 ILCS 5/12-4(b)(8) (West 2008)) and attempted robbery (720 ILCS 5/18-1(a), 8-4(a) (West 2008)) in the Fourth Municipal District of the circuit court of Cook County. He was sentenced by the court to 24 months' probation and, as a condition of his probation, was ordered to participate in "120 days Cook County Day Reporting," an alternative incarceration program run by the Cook County sheriff's office.

¶ 5      On January 28, 2010, defendant failed to report to the Day Reporting program. He was subsequently apprehended and charged with escape under section 5-8A-4.1 of the Electronic Home Detention Law (730 ILCS 5/5-8A-4.1 (West 2008)). The indictment specifically stated that defendant "knowingly violated a condition of the Electronic Home Monitoring Detention Program [(Electronic Monitoring program)]" by "remov[ing] his external monitoring transmitter, and fail[ing] to report to day reporting as required."

¶ 6      Defendant was tried by a jury. The following evidence was adduced. The State's first witness was Willie Walker, who had been an investigator for the Cook County sheriff's

police in its Electronic Monitoring program. Walker testified that the Electronic Monitoring program is "a program that's set up through the Sheriff's Department to place certain individuals that qualify for the program on house arrest, house confinement." He testified that some of the participants are assigned to the program as part of a sentence. Walker was responsible for interviewing the participants in the program and processing their paperwork.

¶ 7 Walker was specifically assigned to defendant's case. On January 12, 2010, he presented defendant with a "Cook County Sheriff's Office participant contract." Walker described it as a contract containing written guidelines and instructions about the Electronic Monitoring program. He stated that every participant in the program has to sign this contract. He also testified that there is "a day reporting program that may be a condition of electronic home monitoring." Walker identified People's Exhibit 1 as a "participant's contract for the Cook County Sheriff's Home Confinement Program, known as the electronic monitoring [*sic*]," signed by him and defendant.

¶ 8 The relevant portions of the contract state:

"You have been court ordered to participate in the Cook County Sheriff's Electronic Monitoring Program in lieu of being detained in the Cook County Department of Corrections, and do hereby agree to abide by the conditions of the Monitoring Program. By affixing your initials to each program condition and your signature at the end of this contract you do hereby agree to the fact that you fully understand this contract and agree to the conditions set forth herein. You agree to remain within the interior premises of your residence twenty-four hours per day unless the Sheriff's Office Personnel have granted prior approval of an absence.

\* \* \*

You agree to maintain a working telephone in your residence, a monitoring device in your residence, and on your person, or a monitoring device in your residence and on your person in the absence of a telephone.

\* \* \*

You agree not to commit another crime while on Electronic Monitoring.

\* \* \*

You understand that violation of the program conditions may result in a warrant being issued for your arrest for [the] crime of escape under 730 ILCS 5/5-8A-4.1.

\* \* \*

Your signature below indicates the following:

That you have read and agree to the above conditions.

\* \* \*

That you have received a detailed copy of the rules and regulations of Electronic Monitoring and agree to follow and abide by them.

That you understand that failure to comply with the rules and regulations may result in your reincarceration into the Cook County Department of Corrections.

That you have viewed the Electronic Monitoring new release participant video."

Defendant initialed each of the program conditions listed and signed the contract.

¶ 9    On cross-examination, defense counsel asked Walker where the participant contract states that day reporting is a condition of the Electronic Monitoring program. Walker testified that the abbreviation "sent[.]" written in the corner of the Electronic Monitoring program participant contract was internal shorthand that meant that defendant was sentenced to the Day Reporting program. Additionally, he testified that the absence of any further court dates listed on the contract also indicated that defendant was sentenced to the Day Reporting program.

¶ 10   On redirect examination, the following colloquy took place between the assistant State's Attorney and Walker.

"Q. What was [defendant] sentenced to?

A. The [D]ay [R]eporting program.

Q. The [D]ay [R]eporting program. And a condition of the [D]ay [R]eporting program is electronic home monitoring, is that correct?

A. That's correct."

¶ 11   On recross-examination, the following exchange occurred between defense counsel and Walker.

"Q. Is it your testimony that a condition of [the D]ay [R]eporting [program] is electronic monitoring?

* * *

A. They both work side by side. [Defendant] can't be in day reporting and be on electronic monitoring program without being sentenced to day reporting."

Defense counsel then asked Walker:

"Q. Are there any documents, did [defendant] sign anything indicating a condition of day reporting is electronic monitoring?

A. There are other documents that are kept in his file. This is a participant contract [for the Electronic Monitoring program]."

Q. Okay. So you're saying there was a document that supports that a condition of day reporting is electronic monitoring?

A. Yeah. That document would come from the court system."

¶ 12   The State then called Sean Roberts, an investigator with the Cook County sheriff's day reporting unit. He testified that the Day Reporting program is an alternative incarceration program that provides drug treatment and education services to defendants while their cases are pending or as part of their sentences. Roberts served as a case investigator and met with program participants. He met with defendant on January 13, 2010, and explained to him the "rules and regulations for what we expect to be doing while [defendant is] under the custody of the Sheriff's Department as [he is] being placed on the Sheriff's Day Reporting [p]rogram, what the new conditions are, what we expect of [defendant]."

¶ 13   Roberts provided the following testimony about the conditions and restrictions of the Day Reporting program.

-4-

"We're going to expect [defendant] to report to us Monday through Friday, he will keep the home electronic monitoring equipment on him. To be monitored by home electronic monitoring it's mandatory he reports to us by 8:00 a.m. Monday through Friday and he'll be with us throughout the duration of the day till 3:00 p.m. and also to inform him he [can move about freely] from 6:00 a.m. in the morning to 9:00 p.m. in the evening where he has to return back home ***."

Roberts confirmed that he "explained to [defendant] that he would be monitored by the electronic monitoring."

¶ 14    Roberts testified that on January 28, 2010, defendant failed to report to the Day Reporting program, evidenced by his failure to sign the daily log. Roberts called defendant's house and spoke to his father. By noon, Roberts notified his supervisor that defendant did not report to the Day Reporting program as required.

¶ 15    Larry Parker, an investigator with the electronic monitoring unit, then testified. Parker was responsible for investigating violations of the Electronic Monitoring program and making unannounced visits to the program participants' homes. At about 2 p.m. on January 28, 2010, Parker and his partner were assigned to investigate a report that an electronic monitoring transmitter, or ankle bracelet, was removed or tampered with. They were dispatched to defendant's house, but defendant was not at home. Parker took the electronic monitoring receiver from defendant's house.

¶ 16    Finally, the State called Michael Gercone, an investigator in the fugitive unit of the department of community supervision and intervention (DCSI) within the sheriff's office. His unit was responsible for apprehending fugitives who leave DCSI programs–which include the Electronic Monitoring program, the Day Reporting program, and boot camp, among others–without permission. Gercone was assigned to investigate a report that defendant "took off from the program without permission," Gercone spoke to defendant's father on the telephone and then went to defendant's house. When Gercone arrived there, he found defendant at home sleeping. Gercone woke defendant up and took him into custody. Gercone testified that he personally recovered the ankle bracelet from defendant's house, but did not remember how he "[went] about recovering the ankle bracelet."

¶ 17    After the State rested its case, defense counsel made a motion for directed verdict. She argued that the State failed to prove that defendant committed the crime of escape by violating the conditions of the Electronic Monitoring program. She contended that the State failed to establish that defendant's attendance at the Day Reporting program was a condition of the Electronic Monitoring program. She noted that the participation contract that defendant signed does not require him to participate in the Day Reporting program. Defense counsel further argued that the State elicited no evidence that defendant tampered with his electronic monitoring equipment.

¶ 18    The court reviewed every condition contained in the participation contract to determine whether the State produced evidence of any violations. The State confirmed that it did not introduce into evidence any additional rules and regulations of the Electronic Monitoring program that were referenced in the participation contract. The following colloquy then took place.

"THE COURT: The fact that he did not show up on that one day on January 28 for the *** day reporting. *** How is it a violation of electronic monitoring? It's just a violation of probation. *** The fact that he did not show up for the day reporting in and of itself doesn't mean he violated the monitor.

[ASSISTANT STATE'S ATTORNEY]: Judge, day reporting is a condition of [the E]lectronic [M]onitoring program. Day reporting is a condition of the E[lectronic ]M[onitoring] program and E[lectronic ]M[onitoring] is a condition of day reporting, and you had two witnesses who testified to that. He violated a condition by not showing up on January 28th, and not signing the sign-in sheet.

THE COURT: All right. Is there something in these various documents you offered [to] indicate if you don't show up for the [D]ay [R]eporting program, that that's a violation of [the E]lectronic [M]onitoring program?

[ASSISTANT STATE'S ATTORNEY]: It's not in that document, but you had Investigator Sean Roberts who was [defendant's] case manager, who met with him and who testified that he told him he had to report five days a week, Monday through Friday, and he said he would give him until 8:15 to 3 p.m. to attend classes or, you know, the programs that they run in day reporting and that's a condition of the electronic monitoring program. They go hand in hand. Those were his words."

¶ 19 The State then addressed the tendered jury instructions.

"[ASSISTANT STATE'S ATTORNEY]: [U]nder the issues instruction for escape [under section 5-8A-4.1] those are one of the options it has [*sic*]; failed to report to day reporting. It's [Illinois Pattern Jury Instructions, Criminal, No. 22.77 (4th ed. 2000)].

* * *

THE COURT: The third proposition in the instructions is that he violated the condition of [the E]lectronic [M]onitoring [program] by, and the State says by not reporting to [the D]ay [R]eporting [program,] a condition of [the E]lectronic *** [M]onitoring [program].

You're saying that the fact that he didn't show up for the [D]ay [R]eporting program on that one day, January 28, constituted the offense of escape [under section 5-8A-4.1]?

[ASSISTANT STATE'S ATTORNEY]: Yes, that's a condition. I think we have carried our burden at this stage. I think it's a jury question whether or not [*sic*].

THE COURT: I guess he's probably right. *** Now, whether the jury is going to buy the argument that's an escape because he didn't show up for [the D]ay [R]eporting [program] for one day and he's found in the house the same day later on. That's a jury question."

¶ 20 At that point, defense counsel sought clarification from the court.

"[DEFENSE COUNSEL]: [The court] indicated that the State is correct, but I haven't seen–

* * *

I did look at the pattern jury instruction, but I certainly didn't see that.

I reviewed the pattern jury instructions just to make sure we were on firm ground and I did not see it. The [c]ourt indicates the State is correct and I'm just wondering what the [c]ourt actually saw in here that would lead to that conclusion even though it's not in the contract–

THE COURT: I would point out you make the argument–the defense[,] that is–that what he got indicates [he] is in agreement with the [E]lectronic [M]onitoring program. It doesn't necessarily say that if he misses one day, it's a violation, it's an escape or if he takes off the monitor it constitutes an escape. You can argue those things that it doesn't constitute escape and they can argue it does.

[DEFENSE COUNSEL]: Your Honor, it has to show on the contract.

THE COURT: That's your argument. The State says that the [E]lectronic [M]onitoring program is part of the daily reporting.

[DEFENSE COUNSEL]: But they didn't prove that.

THE COURT: If I were hearing the case myself, I would probably agree with you, but I'm not hearing the case; the jury is hearing the case so let the jury decide. If, in the rather unlikely event he's found guilty, you make a [posttrial] motion and we'll discuss it further then."

The court denied defendant's motion for directed verdict.

¶ 21 Defendant first called Roberts in his case. Defense counsel asked Roberts when defendant was court-ordered to participate in the Electronic Monitoring program. Roberts replied that he did not know when defendant was placed in the Electronic Monitoring program, but that he was placed in the Day Reporting program on January 13, 2010.

¶ 22 Defendant next called his grandmother, Crystal Byrd, to testify. She stated that at approximately 8 p.m. on January 28, eight police officers arrived at the house she shared with defendant. She testified that defendant was sleeping when they arrived. She also testified that he was wearing his electronic monitoring transmitter on his ankle at the time. The officers waited for defendant to get dressed and then they "took him."

¶ 23 Defendant's father, Devon Rogers, Sr., also testified. His testimony about defendant's arrest was similar to Byrd's. He also testified that he was at home when an officer arrived at approximately 2 p.m. to "pick up the monitoring box." Rogers also testified that Gercone called him at approximately 5 p.m. and told Rogers to call him back when defendant got home. Rogers made that phone call between 6:30 and 7 p.m. He testified that the police arrived and arrested defendant between 7:30 and 8 p.m.

¶ 24 After defendant rested his case, the parties and the court discussed jury instructions. The State offered different versions of Illinois Pattern Jury Instructions, Criminal, Nos. 22.76 and 22.77 (4th ed. 2000) (hereinafter IPI Criminal 4th Nos. 22.66 and 22.77). IPI Criminal 4th No. 22.76, entitled "Definition Of Escape–Failure To Comply With A Condition of Electronic Home Monitoring Detention Program," reads as follows:

"A person [(charged with) (convicted of)] a [(felony) (misdemeanor)] commits the offense of escape when he is conditionally released from a supervising authority through

an electronic home monitoring detention program and he knowingly violates a condition of the electronic home monitoring detention program by _____.”

The third proposition of the accompanying issues instruction, IPI Criminal 4th No. 22.77, is the only proposition implicated in this case. It reads:

"To sustain the charge of escape, the State must prove the following propositions:

* * *

*Third Proposition:* That the defendant knowingly violated a condition of the electronic home monitoring detention program by _____.” IPI Criminal 4th No. 22.77.

The committee notes to both instructions state, "Insert in the blank the appropriate condition." IPI Criminal 4th Nos. 22.76, 22.77, Committee Notes, at 151-52.

¶ 25 The State first tendered instructions stating that defendant knowingly violated a condition of the electronic home monitoring detention program by "removing his external transmitter." The court determined that the State produced no evidence that defendant removed or tampered with the external transmitter and refused to give that instruction to the jury.

¶ 26 The State's other proposed instruction stated that defendant violated the electronic monitoring program by "failing to report to day reporting as required." Defense counsel objected and the following colloquy took place.

"[DEFENSE COUNSEL]: Jury instructions are a matter of law and jurors are not allowed to determine matters of law[,] only matters of fact. *** [I]n this case, Judge, you're telling the jury that as a matter of law if [defendant] doesn't show up for day reporting, it constitutes the escape and that takes away our defense.

* * *

THE COURT: That's the definition of the crime, that a person who is on home monitoring and does not show up for day reporting[,] that could be an escape. I've already indicated that based on the statute that a person that's on day reporting is put on a monitor, [the State] can argue that that shows an offense took place. Whether the jury wants to accept it or not, that's another story.”

The court then instructed the jury on the latter versions of IPI Criminal 4th Nos. 22.76 and 22.77 over defendant's objection.

¶ 27 The jury convicted defendant of escape for failing to report to the Day Reporting program. Defendant filed a posttrial motion, arguing that his due process rights were violated because he was not informed that failure to report to the Day Reporting program would result in prosecution for the crime of escape. He also contended that the State failed to prove that day reporting was a condition of the Electronic Monitoring program. Defendant also challenged the jury instructions, arguing that there was no evidence presented to support the instruction that failure to report to the Day Reporting program constituted escape under the Electronic Home Monitoring Law. In response, the State argued that two investigators with the Cook County sheriff's office testified that day reporting and electronic monitoring "go hand in hand." The court denied defendant's posttrial motion.

¶ 28 B. The Day Reporting Program

¶ 29    The supreme court recently discussed the origin of the sheriff's Day Reporting program. *People v. Beachem*, 229 Ill. 2d 237 (2008). The Cook County sheriff's office was involved in litigation over the poor conditions in the county jail. Pursuant to a consent decree, the sheriff's office reduced overcrowding at the jail by releasing certain nonviolent and pretrial offenders from custody and placing them in community-based programs. *Beachem*, 229 Ill. 2d at 240.

¶ 30    DCSI, a department within the sheriff's office, administers all such " 'programs *** for inmates outside the Department of Corrections.' " *Beachem*, 229 Ill. 2d at 241 (quoting http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008) (now located at http://www.cookcountysheriff.org/departments/departments_dcsi_main.html (last visited May 16, 2012))). Specifically, DCSI oversees the Day Reporting program and the Electronic Monitoring program, among others. http://www.cookcountysheriff.org/departments/departments_dcsi_main.html (last visited May 16, 2012). It also maintains its own fugitive unit to " 'locate and reincarcerate' " missing participants of its programs. *Beachem*, 229 Ill. 2d at 241 (quoting http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008) (now located at http://www.cookcountysheriff.org/departments/departments_dcsi_main.html (last visited May 16, 2012))).

¶ 31    The Day Reporting program is an intensive supervision program that provides educational, vocational, and life skills training that participants need to be productive members of society. http://www.cookcountysheriff.org/departments/depart-ments_dcsi_dayreporting.html (last visited May 16, 2012). The participants are required to report daily to the Day Reporting Center and submit to drug testing. According to the sheriff's Web site, after attending the required classes, the participants are "able to return to their homes in the community *** under electronic monitoring." http://www.cookcountysheriff.org/dcsi/dayreporting.html (last visited May 16, 2012).

¶ 32    There are no statutory guidelines governing the program and the sheriff's office has unfettered discretion to change or dissolve the program–and reincarcerate program participants–at any time without warning. *Beachem*, 229 Ill. 2d at 251. According to the Cook County sheriff's office, if a participant does not abide by the rules of the program–for example, by being excessively tardy or absent, committing a new offense, or committing another rule infraction–he will be reincarcerated. *Beachem*, 229 Ill. 2d at 251 (quoting http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008) (now located at http://www.cookcountysheriff.org/departments/departments_dcsi_main.html (last visited May 16, 2012))). Nevertheless, the sheriff has no burden to prove that a participant violated the program's rules and need not obtain a warrant before reincarcerating the offender. *Beachem*, 229 Ill. 2d at 251. Program participants also are not entitled to representation or a hearing before being reincarcerated, nor may they challenge their reincarceration. *Beachem*, 229 Ill. 2d at 251. Participants must simply "adhere to the sheriff's unilaterally imposed conditions of participation." *Beachem*, 229 Ill. 2d at 251.

¶ 33                            C. The Electronic Monitoring Program

¶ 34    The sheriff's Electronic Monitoring program is another community-based alternative

incarceration program that allows certain classes of pretrial and postsentence inmates to remain in the community instead of being incarcerated. http://www.cookcountysheriff.org/dcsi/electronicmonitoring.html (last visited May 16, 2012). Electronic monitoring programs are governed by the Electronic Home Detention Law (730 ILCS 5/5-8A-1 *et seq.* (West 2008)), in the Unified Code of Corrections.

¶ 35    Under the Electronic Home Detention Law, a person serving a sentence for a Class 2, 3, or 4 felony "may be placed in an electronic home detention program pursuant to Department [of Corrections] administrative directives." 730 ILCS 5/5-8A-3(e), 3-1-2(f-5) (West 2008). Home detention is "the confinement of a person convicted or charged with an offense to his place of residence under the terms and conditions established by the supervising authority." 730 ILCS 5/5-8A-2(C) (West 2008). Section 5-8A-3(f) provides:

"Applications for electronic home detention may include the following:

(1) pretrial or pre-adjudicatory detention;

(2) probation;

* * *

(8) post-trial incarceration." 730 ILCS 5/5-8A-3(f) (West 2008).

¶ 36    The supervising authority, which specifically includes the sheriff, may develop reasonable guidelines for the operation of its electronic home detention program. 730 ILCS 5/5-8A-4 (West 2008). At a minimum, the program's rules must direct the participants to remain in their residences at all times designated by the supervising authority and permit any agent of the program into the residence at any time for the purpose of verifying compliance with the conditions of home detention. 730 ILCS 5/5-8A-4(A), (B) (West 2008). With prior approval of the court or the supervising authority, participants may leave their residences to: attend work or seek work; attend school; attend religious services; participate in approved community service programs; or receive medical treatment, among other things. 730 ILCS 5/5-8A-4(A) (West 2008).

¶ 37    Participants shall also "acknowledge and participate with the approved electronic monitoring device as designated by the supervising authority at any time for the purpose of verifying the participant[s'] compliance" with the conditions of detention. 730 ILCS 5/5-8A-4(D) (West 2008). An approved electronic monitoring device is a device used to record or transmit information about a participant's presence in or absence from his residence. 730 ILCS 5/5-8A-2(A) (West 2008). The device may record or transmit oral or wire communications, visual images, or information about a participant's activities while inside his residence. 730 ILCS 5/5-8A-2(A) (West 2008). To that end, the participant must have a monitoring device at his residence or on his person, or both, and maintain a working telephone there. 730 ILCS 5/5-8A-4(E) (West 2008).

¶ 38    Among the remaining requirements for the program, the supervisory authority must specifically provide notice to the participants that "violation of the order for home detention may subject the participant to prosecution for the crime of escape as described in [s]ection 5-8A-4.1 [(730 ILCS 5/5-8A-4.1 (West 2008))]." 730 ILCS 5/5-8A-4(H) (West 2008). The participants must also refrain from committing other crimes "during the period of home detention ordered by the [c]ourt"; obtain approval from the supervising authority before

-10-

changing their residence; and abide by any other conditions imposed by the supervising authority. 730 ILCS 5/5-8A-4(F), (G), (I) (West 2008).

¶ 39                                D. Supplemental Briefing

¶ 40    In *Beachem*, the supreme court also acknowledged that a defendant's failure to report to the sheriff's Day Reporting program may be prosecuted as a violation of section 31-6 of the Criminal Code of 1961 (Criminal Code), which applies to defendants who fail to report to a penal institution (720 ILCS 5/31-6 (West 2008)). *Beachem*, 229 Ill. 2d at 253 (citing *People v. Simmons*, 88 Ill. 2d 270, 273-74 (1982)). See also *People v. Campa*, 217 Ill. 2d 243, 259 (2005). *Beachem* analyzed the issue of whether a defendant was "in custody" when participating in the Day Reporting program in lieu of pretrial detention, even though he was released into the community, such that his participation should be counted toward his time served after sentencing. *Beachem*, 229 Ill. 2d at 253-54. The court recognized that the sheriff's office was responsible for releasing inmates to the Day Reporting program when they were remanded to custody; however, they remained under the legal authority of the sheriff and were, therefore, in custody. *Beachem*, 229 Ill. 2d at 252.

¶ 41    In this case, although defendant was sentenced by the court to participate in the Day Reporting program as a condition of probation, he was nevertheless charged and convicted of escape under section 5-8A-4.1 of the Electronic Home Monitoring Law for his failure to report to the Day Reporting program. *Beachem* did not explicitly hold that section 31-6 was the only statute under which one could be prosecuted for violating the terms of the Day Reporting program. Nevertheless, we ordered the parties to submit supplemental briefs addressing "the applicability, if any, of *Beachem*, *Campa*, and section 31-6 of the Criminal Code to the facts of this case. Specifically, the parties must provide legal authority for proceeding under the Electronic Home Detention Law as opposed to section 31-6."

¶ 42    In addition, because a probationer is typically remanded to the custody of the probation department and a Day Reporting program participant typically is in the custody of the sheriff, we also ordered the parties to identify the source of the circuit court's authority to sentence a defendant to the Day Reporting program as a condition of probation.

¶ 43                                II. ANALYSIS
¶ 44                        A. Issues in Supplemental Briefs
¶ 45                    1. Section 31-6 of the Criminal Code

¶ 46    Both parties contend that section 31-6 of the Criminal Code (720 ILCS 5/31-6 (West 2008)) has no bearing on the resolution of this case. Defendant did not argue that section 31-6 was the sole basis for prosecuting an inmate who fails to report to the Day Reporting program. Rather, he argued that section 31-6 was irrelevant because he was not charged under that statute and it would be inappropriate to analyze the facts of this case under a different criminal statute. He further reiterated his position that the State failed to prove that his failure to report to Day Reporting was a violation of the Electronic Home Detention Law.

¶ 47    The State asserted that the State's Attorney's office has sole discretion to determine

which charges it brings against an offender. Therefore, regardless of whether an inmate could be charged under section 31-6, it chose to bring charges under the Electronic Home Detention Law. The State also disputed the suggestion that section 31-6 was the only statute under which one could be prosecuted for failing to report to the Day Reporting program.

¶ 48 Insofar as the parties have not addressed the relationship between section 31-6 of the Criminal Code and section 5-8A-4.1 of the Electronic Home Detention Law, we are not inclined to address this issue further.

¶ 49      2. Court's Authority to Sentence Offenders to the Day Reporting Program

¶ 50 We sought the parties' input on the source of the circuit court's authority to impose the Day Reporting program as a condition of a defendant's probation to aid in determining whether a violation of the conditions of the Day Reporting program should be viewed as a violation of probation or a violation of one of the sheriff's programs. The probation sentence was entered in a prior case in the Fourth Municipal District of the Cook County circuit court and the transcript of the sentencing hearing was not contained in the record on appeal in this case. The order of probation, which is contained in the record, demonstrates that while day reporting was made a condition of defendant's probation, electronic monitoring was not.

¶ 51 In his brief, defendant argued that the circuit court had no authority to sentence a defendant to the Day Reporting program as a condition of probation. He argued that the court improperly delegated to the sheriff the judicial function of imposing the terms and conditions of probation, citing *People v. Thomas*, 217 Ill. App. 3d 416, 417 (1991). At oral argument, defendant's appellate counsel asked this court to render his underlying sentence void.

¶ 52 However, we have no jurisdiction to grant that relief. Although defendant correctly notes that a void judgment can be attacked at any time (see, *e.g.*, *People v. Wade*, 116 Ill. 2d 1, 5 (1987)), it must nevertheless be addressed in an appeal from that judgment. Defendant's probation sentence was imposed in a different criminal case that is not the subject of this appeal. Consequently, we cannot evaluate the propriety of that sentence. However, our ability to review the issues initially raised in defendant's appellate brief is not affected by this procedural default.

¶ 53                     B. Issues in Appellate Briefs

¶ 54 Defendant's argument on appeal, put simply, involves the following propositions. In a previous case, he was sentenced to probation and 120 days in the Cook County Day Reporting Center program. He acknowledges that he was also "processed into" the sheriff's Electronic Monitoring program. After failing to attend the Day Reporting program on January 28, 2010, he was indicted on the charge of escape under section 5-8A-4.1 of the Electronic Home Detention Law and was ultimately convicted. Defendant argues that the State failed to establish that attendance at the Day Reporting program was a condition of the Electronic Monitoring program such that he is subject to prosecution under section 5-8A-4.1. Defendant appeals his conviction both as a challenge to the sufficiency of the evidence and a challenge to the instructions given to the jury. Because our analysis of the jury instruction issue necessarily involves a discussion of the sufficiency of the evidence, we will analyze the

jury instruction challenge first.

¶ 55                                    1. Jury Instructions

¶ 56    Defendant contends that the trial court erred in instructing the jury that a failure to report to the Day Reporting program constitutes escape under section 5-8A-4.1. The State tendered IPI Criminal 4th Nos. 22.76 and 22.77. IPI Criminal 4th No. 22.76 reads as follows:

> "A person [(charged with) (convicted of)] a [(felony) (misdemeanor)] commits the offense of escape when he is conditionally released from a supervising authority through an electronic home monitoring detention program and he knowingly violates a condition of the electronic home monitoring detention program by _____."

¶ 57    The third proposition of the accompanying issues instruction, IPI Criminal 4th No. 22.77, is the only proposition implicated in this case. It reads:

> "To sustain the charge of escape, the State must prove the following propositions:
>
> * * *
>
> *Third Proposition:* That the defendant knowingly violated a condition of the electronic home monitoring detention program by _____." IPI Criminal 4th No. 22.77.

¶ 58    The Committee Notes to both instructions state "Insert in the blank the appropriate condition." The State tendered instructions stating that defendant knowingly violated a condition of the electronic home monitoring detention program by "failing to report to day reporting as required."

¶ 59    Defendant contends that the trial court erred in giving this instruction because it suggested to the jury that, as a matter of law, a failure to report to the Day Reporting program is a violation of the Electronic Monitoring program. Defendant contends that was an issue that the State had to prove in this case and the court's instruction usurped the role of the jury. The trial court gave the instruction over objection, reasoning that it provided the definition of the offense and the jury would have to decide whether an offense took place.

¶ 60    Initially, the State contends that defendant forfeited review of this issue because he did not offer an alternative instruction at trial. We disagree. It is well settled that " 'a defendant forfeits review of any putative jury instruction error if [he] does not object to the instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion.' " *People v. Mohr*, 228 Ill. 2d 53, 64-65 (2008) (quoting *People v. Herron*, 215 Ill. 2d 167, 175 (2005)). That is, a defendant need not offer an alternative instruction to preserve the issue for appeal if he has otherwise objected at trial and in his posttrial motion. There is no question that defense counsel objected during the jury instruction conference, triggering a detailed discussion with the trial court about whether giving the instruction as proposed implicates a matter of fact or law. Additionally, defendant included the objection in his posttrial motion. Thus, the issue is preserved for review.

¶ 61    Turning to the merits, we begin with the understanding that jury instructions "convey the legal rules applicable to the evidence presented at trial and thus guide the jury's deliberations toward a proper verdict." *Mohr*, 228 Ill. 2d at 65. There must be some evidence in the record

to justify giving an instruction. *Mohr*, 228 Ill. 2d at 65. Proposed instructions that are not supported by either the evidence or the law should not be given. *Mohr*, 228 Ill. 2d at 65. The trial court decides, in the exercise of its discretion, which issues are raised by the evidence and whether a proposed instruction should be given and its decision is reviewed for an abuse of discretion. *Mohr*, 228 Ill. 2d at 65-66. On review, we must determine "whether the instructions, considered together, fully and fairly announce the law applicable to the theories of the State and the defense." *Mohr*, 228 Ill. 2d at 65. Where the " 'jury instructions are not clear enough to avoid misleading the jury [or if the jury instructions do not accurately state the law],' " the trial court has abused its discretion by giving them. *Mohr*, 228 Ill. 2d at 66 (quoting *In re Timothy H.*, 301 Ill. App. 3d 1008, 1015 (1998)).

¶ 62    Here, the trial court's instructions to the jury were indeed erroneous because they failed to instruct the jury on a contested issue in the case. IPI Criminal 4th Nos. 22.76 and 22.77 permitted the State to submit to the jury that failing to report to the Day Reporting program violated a condition of the Electronic Monitoring program. However, defendant contested that such a condition existed and the jury should have been instructed to resolve that dispute. If the jury determined that day reporting was a condition of the Electronic Monitoring program, then it could decide whether defendant violated that condition by failing to report to the Day Reporting program.

¶ 63    In the case below, the court and the parties recognized that whether day reporting was a condition of the Electronic Monitoring program was a question of fact for the jury, and the State reiterated that position at oral argument. However, the instructions as given did not apprise the jury that it would have to decide that issue as a threshold matter. Rather, the instructions given by the court misled the jury into believing that day reporting was a condition of the Electronic Monitoring program and that it merely had to decide whether defendant failed to attend the Day Reporting program on January 28, 2010. By failing to identify a central issue in this case and failing to instruct the jury that it should resolve that factual dispute, the court failed to accurately inform the jury of defendant's theory of the case and misled the jury to think that day reporting was a condition of the Electronic Monitoring program. That had the effect of relieving the State of its burden of proving an element of the escape charge beyond a reasonable doubt. Accordingly, the trial court abused its discretion in giving the jury instructions as proposed by the State. See *Mohr*, 228 Ill. 2d at 65-66.

¶ 64    The circumstances in this case are analogous to those in *People v. Mohr*. In *Mohr*, the defendant was charged and ultimately convicted of second-degree murder. That charge required the State to prove all of the elements of first-degree murder and the State was deemed to have conceded that mitigating circumstances, such as provocation, existed to lessen the severity of the crime. *Mohr*, 228 Ill. 2d at 66. Although the State argued to the jury that it "conceded" that the defendant was provoked, it never presented any evidence that the defendant was provoked into attacking the victim. The court gave the jury the second-degree murder instruction as well as an instruction that defined provocation. However, the court never explained to the jury that the provocation instruction was merely intended to be a definition.

¶ 65    The supreme court held that the court abused its discretion in giving the provocation instruction because it forced the jury to conclude that the defendant was in fact involved in

an altercation with the victim and to infer that the defendant killed the victim despite his denials. *Mohr*, 228 Ill. 2d at 68. Introducing the notion that defendant was provoked and then conceding the same created the inference that an altercation occurred between the defendant and the victim, which, in turn, led the jury to infer that the defendant had a motive to kill the victim. All of this had the effect of relieving the State of its burden of proving that defendant killed the victim. *Mohr*, 228 Ill. 2d at 67-68.

¶ 66 Similarly, in this case, the court did not instruct the jury that it should first determine whether the State proved its assertion that reporting to the Day Reporting program was a condition of the Electronic Monitoring program. Rather, in giving the instruction, the court created the unavoidable inference that day reporting was in fact a condition of the Electronic Monitoring program. All that was left for the jury to decide was whether the condition had been violated. That impermissibly absolved the State of proving an element of its case. Consequently, the court erred in giving the instruction as proposed by the State because it misled the jury about how to apply the legal rules in this case.

¶ 67 Additionally, there was no support in the law for giving the instructions. The court erroneously concluded that the instructions merely stated the "definition of the crime[:] that a person who is on home monitoring and does not show up for day reporting[,] that could be an escape." There is no legal authority to support that proposition. Despite the court's explanation that its decision was "based on the statute," there are no statutory guidelines governing the Day Reporting program. See *Beachem*, 229 Ill. 2d at 251 ("[a] defendant must simply adhere to the sheriff's unilaterally imposed conditions of participation").

¶ 68 At the hearing on the directed verdict, the court asked the State to explain how a failure to report the Day Reporting program violated the Electronic Monitoring program. The court stated, "It's just a violation of probation. *** The fact that he did not show up for the day reporting in and of itself doesn't mean he violated the monitor." The State then represented that "under the issues instruction for escape[,] those are one of the options it has; failed to report to day reporting. It's [IPI Criminal 4th No.] 22.77." However, our review of IPI Criminal 4th No. 22.77 shows no support for that representation. On the contrary, the instruction merely states, "[i]nsert in the blank the appropriate condition." We can find no support in the evidence or the law for giving the instructions as presented by the State, and thus, the court erred in giving the instructions. Accordingly, we reverse defendant's conviction.

¶ 69       2. Double Jeopardy/Sufficiency of the Evidence

¶ 70 Ordinarily, reversing a conviction based on erroneous jury instructions would result in a new trial and in his brief, defendant asked for that relief. *People v. Lopez*, 229 Ill. 2d 322, 367 (2008). However, retrial raises double jeopardy concerns and we are required to assess the sufficiency of the evidence presented against a defendant at the original trial. *Lopez*, 229 Ill. 2d at 367. The double jeopardy clause "prohibits retrial for the purpose of affording the prosecution another opportunity to supply evidence [that] it failed to present in the first proceeding." *Lopez*, 229 Ill. 2d at 367 (citing *Burks v. United States*, 437 U.S. 1, 11 (1978)). That is, the State cannot retry a defendant if the evidence introduced at the initial trial was

insufficient to sustain a conviction. *Lopez*, 229 Ill. 2d at 367.

¶ 71    Thus, we must determine whether, after reviewing all of the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lopez*, 229 Ill. 2d at 367. On review, we will not retry the defendant. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The trier of fact is in the best position to judge the credibility of the witnesses and we must give due consideration to the fact that the jury saw and heard the witnesses. *Wheeler*, 226 Ill. 2d at 114-15. To that end, we afford the jury's findings on credibility great weight. *Wheeler*, 226 Ill. 2d at 115.

¶ 72    Nevertheless, a jury's decision to accept certain testimony is "neither conclusive nor binding." *Wheeler*, 226 Ill. 2d at 115; see also *People v. Herman*, 407 Ill. App. 3d 688, 704 (2011). Although a jury may have accepted certain testimony as true, it is not necessarily reasonable. *Wheeler*, 226 Ill. 2d at 115 (noting that "reasonable people may on occasion act unreasonably" (internal quotation marks omitted)). Therefore, a conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt. *Wheeler*, 226 Ill. 2d at 115; *Herman*, 407 Ill. App. 3d at 704.

¶ 73    After reviewing all of the evidence presented in the light most favorable to the State, we are forced to conclude that it is so unsatisfactory, it cannot sustain defendant's conviction. Accordingly, double jeopardy prevents defendant from being retried and his conviction for escape must be vacated outright. *Lopez*, 229 Ill. 2d at 367.

¶ 74    On appeal, the State argues that the Day Reporting program is a condition of the Electronic Monitoring program. As such, the argument goes, if defendant violated the Day Reporting program's conditions by failing to attend, then he has necessarily violated a condition of the Electronic Monitoring program, subjecting defendant to prosecution under section 5-8A-4.1. 730 ILCS 5/5-8A-4.1 (West 2008).

¶ 75    To sustain a conviction under section 5-8A-4.1, the State must have presented sufficient reasonable evidence that "defendant knowingly violated a condition of the electronic home monitoring detention program by failing to report to day reporting as required." See IPI Criminal 4th No. 22.77. As we have explained, that proposition requires the State to establish that day reporting is a condition of the Electronic Monitoring program. It is important to note that proof of the converse is unavailing: logically, if electronic monitoring were a condition of the Day Reporting program to which defendant was sentenced, a failure to attend the Day Reporting program would not necessarily violate the terms of the Electronic Monitoring program.

¶ 76    In the trial below, the State did not present any evidence that day reporting was a condition of the Electronic Monitoring program. Willie Walker, the investigator in the Electronic Monitoring program, testified either that the Electronic Monitoring program and the Day Reporting program "work side by side," which denotes that they operate independently of each other, or he testified that electronic monitoring was a condition of the Day Reporting program. Walker even testified that defendant's file contained a court document stating that electronic monitoring is a condition of the Day Reporting program, although no such document was ever introduced into evidence.

¶ 77    The participant contract defendant signed contained no provision requiring him to participate in day reporting as a condition of the Electronic Monitoring program. Although the participant contract indicated that there were additional rules and regulations for the Electronic Monitoring program, the State never introduced them into evidence. When Walker was asked on cross-examination where the participant contract indicated that day reporting was a condition of the Electronic Monitoring program, he stated that the abbreviation "sent[.]" written in the corner of the document indicated that defendant was "sentenced to the Day Reporting [p]rogram." That testimony does nothing to support the State's claim on appeal. Nor does the testimony contained in the record citations offered by the State at oral argument.

¶ 78    Roberts' testimony is equally insufficient to support the State's case. As the investigator assigned to defendant's case in the Day Reporting program, Roberts testified that he met with defendant and explained to him the "rules and regulations for what we expect to be doing while [defendant is] under the custody of the [s]heriff's [d]epartment as [he is] being placed on the [s]heriff's Day Reporting [p]rogram, what the new conditions are, what we expect of defendant." Roberts was then asked, "Now as a condition of the Day Reporting [program,] what sort of restrictions are on Defendant?" Roberts replied:

> "I inform [defendant] that we're going to expect [him] to report to us Monday through Friday, he will keep the home electronic monitoring equipment on him. To be monitored by home electronic monitoring it's mandatory he reports to us by 8:00 a.m. Monday through Friday and he'll be with us throughout the duration of the day till 3:00 p.m. and also to inform him he has movement with our program from 6:00 a.m. in the morning to 9:00 p.m. in the evening where he has to return back home ***."

Roberts explicitly stated that in explaining the conditions of the Day Reporting program to defendant, Roberts told defendant that he would be monitored with an electronic monitoring device.

¶ 79    The State relies on one inartful phrase in Roberts' testimony to establish that day reporting is a condition of the Electronic Monitoring program: "[t]o be monitored by home electronic monitoring it's mandatory he reports to us by 8:00 a.m. Monday through Friday." However, we find that interpretation of Roberts' testimony to be unreasonable. Rather, it supports the opposite proposition. Roberts' testimony, taken as a whole, conveys to defendant the conditions of the Day Reporting program. Specifically, as part of the Day Reporting program requirements, he will be monitored with an electronic home monitor. Like Walker's testimony, Roberts' testimony indicates either that the Day Reporting and Electronic Monitoring programs are separate but complementary programs or that electronic monitoring is a condition of the Day Reporting program. Although we must draw all reasonable inferences in favor of the State, we may not allow unreasonable inferences. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Thus, even viewing the evidence in the light most favorable to the State, no reasonable juror could believe that the isolated phrase from Roberts' testimony could establish beyond a reasonable doubt that day reporting was a condition of the Electronic Monitoring program.

¶ 80    The dissent suggests that defendant violated the condition of the participant contract that

reads: "You agree to remain within the interior premises of your residence twenty-four hours per day unless Sheriff's Office Personnel have granted prior approval of an absence." However, that is not the charge under which defendant was indicted or convicted. At trial and before this court, the State has rested its case solely on the testimony of Walker and Roberts to establish that day reporting is a condition of the Electronic Monitoring program and, therefore, the failure to attend the Day Reporting program is a violation of the Electronic Monitoring program. As we have discussed, their testimony fails to do so. The dissent rightly and consistently notes that the State's Attorney's office has the ultimate discretion to choose the charge under which a defendant will be prosecuted. In this case, the State simply did not prove the case it chose to prosecute.

¶ 81    At oral argument, the State cited section 5-8A-4 of the Electronic Home Detention Law, arguing that the sheriff has the authority to promulgate its own rules to govern its Electronic Monitoring program and that it may include conditions not explicitly contained in section 5-8A-4, such as day reporting. 730 ILCS 5/5-8A-4 (West 2008). We have no quarrel with that proposition. The sheriff does indeed have the authority to design its own Electronic Monitoring program. 730 ILCS 5/5-8A-2, 5-8A-4 (West 2008). In fact, Walker acknowledged that day reporting "may" be a condition of the Electronic Monitoring program. However, in this case, the State presented no evidence that day reporting was *in fact* a condition of the Electronic Monitoring program that subjected this defendant to prosecution under section 5-8A-4.1.

¶ 82    Contrary to the dissent's interpretation, our decision does not affect the terms, conditions, or consequences the sheriff may assign to its alternative incarceration programs. We acknowledge the sheriff's authority to design its programs as it deems appropriate and express no opinion on whether, as a matter of law, electronic monitoring should be a condition of the Day Reporting program or whether they should be separate yet complementary programs. Rather, we merely hold that there was no evidence presented here that day reporting was a condition of the Electronic Monitoring program.

¶ 83    Thus, as our review of the record reveals no evidence to sustain the charge, we conclude that the State presented insufficient evidence to convict defendant. Therefore, retrial of defendant on the charge of escape is barred by double jeopardy. Accordingly, defendant's conviction is hereby vacated. See *Lopez*, 229 Ill. 2d at 368.

¶ 84                                    III. CONCLUSION

¶ 85    For the foregoing reasons, we find that the trial court committed reversible error in instructing the jury. The court did not properly instruct the jury that it must determine whether the Day Reporting program was a condition of the Electronic Monitoring program as well as determining whether that condition was violated. Additionally, because the State presented insufficient evidence to convict defendant in the initial trial, double jeopardy bars retrial of defendant on the charge of escape. Therefore, defendant's conviction is hereby vacated.

¶ 86    Reversed; conviction vacated.

¶ 87    PRESIDING JUSTICE QUINN, dissenting.

¶ 88    I respectfully dissent. On January 4, 2012, Devon Rogers pled guilty to one count of aggravated battery and one count of attempted robbery. Rogers was sentenced to 24 months' probation, with a specific condition of "120 days Cook County Day Reporting." As the majority point out, appellate defense counsel chose to not provide this court with a transcript of the guilty plea and sentencing hearing. Consequently, we do not know whether Rogers was advised by the sentencing court that as a condition of being sentenced to 120 days in the Cook County Day Reporting Center program, Rogers would be subject to electronic home monitoring. The majority say that "we have no jurisdiction to grant [the] relief" sought by defendant in this appeal–to hold that "the circuit court had no authority to sentence the defendant to the Day Reporting program as a condition of probation" and that the defendant's sentence is void because "the court improperly delegated to the sheriff the judicial function of imposing the terms and conditions of probation." *Supra* ¶ 51. The majority explain that "Defendant's probation sentence was imposed in a different criminal case that is not the subject of this appeal. Consequently, we cannot evaluate the propriety of that sentence." *Supra* ¶ 52.

¶ 89    In this case, the defendant was charged with violating section 5-8A-4.1, "Escape; failure to comply with a condition of the electronic home monitoring detention program." The basis for this charge was that defendant violated a condition of the electronic home monitoring detention program. To determine whether this charge was proven, we must determine how defendant was placed into the day reporting program and the electronic home monitoring detention program. The defendant on appeal has made a strategic decision to not provide this court with the transcript of the hearing at which defendant's sentence was imposed. The defendant failed to supplement the record on appeal with this transcript even after this court ordered supplemental briefing on the circuit's authority to enter the sentence that it did.

¶ 90    Our supreme court has continually advised courts of review "that the appellant bears the burden of providing a reviewing court with a complete record sufficient to support his claims of error, and any doubts that arise from the incompleteness of the record will be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)." *People v. Lopez*, 229 Ill. 2d 322, 344 (2008). Also see Ill. S. Ct. R. 321 (eff. Feb. 4, 1994) (Contents of the Record on Appeal).

¶ 91    Rather than summarily affirm this appeal based on the sole issue raised, as we are required to do, the majority reward the defendant's purposeful failure by reversing outright the defendant's conviction for escape which by any standard was proven with overwhelming uncontested evidence.

¶ 92    The record discloses that Rogers was interviewed by Cook County Sheriff's Officer Walker on January 12, 2010. The majority spell out most of Walker's testimony, which primarily concerned Walker explaining a "Participant Contract" to Rogers, who signed several paragraphs indicating that he understood the requirements of the electronic monitoring program and he agreed to them. On redirect examination, the State asked Walker:

    "Q. [Assistant State's Attorney]: Mr. Rodgers [*sic*] was sentenced by the Court, is

that correct?

A. That's correct.

Q. What was we [*sic*] sentenced to?

A. The day reporting program.

Q. The day reporting program. And a condition of the day reporting program is electronic home monitoring, is that correct?

A. That's correct."

¶ 93     Cook County Sheriff's Officer Roberts next testified that on January 13, 2010, he interviewed Rogers as part of the intake process of the day reporting program. Roberts testified that the program gave assistance to individuals who were on house arrest, providing drug and alcohol treatment as well as education courses from Chicago City Colleges. Roberts testified that he was assigned to supervise Rogers' participation in the day reporting program. "To report to us Monday through Friday, he will keep the home electronic monitoring equipment on him. To be monitored by home electronic monitoring it's mandatory he reports to us by 8 a.m. Monday through Friday and he'll be with us throughout the duration of the day till 3 p.m. and also to inform him he has movement with our program from 6 a.m. in the morning to 9 p.m. in the evening where he has to return back home and be a curfew time." On direct examination, the State asked Roberts:

"Q. [Assistant State's Attorney]: So presumably after 3:00 p.m. until 9:00 p.m. the Defendant can move about wherever he would like to go?

A. Yes.

Q. When you met with the Defendant you said that you explained to him that he would be monitored by the electronic monitoring?

A. Yes. Also, the equipment would be monitoring him along with me staying on his case to make sure that he complies with–like Mr. Rodgers [*sic*] was presentenced to us for 12-days, so I had to work with his probation officer and his probation judge to follow through with his probation case."

¶ 94     Ten weekdays later, January 28, 2010, Rogers failed to report to the day reporting program. Rogers failed to notify Roberts of any problem. Roberts testified that he went to Rogers' home and Rogers was not there. Rogers' father testified that he telephoned Officer Roberts on the 28th between 6 p.m. and 7 p.m., when his son arrived home. It was uncontested at trial and on appeal that Rogers failed to report to the day reporting program on January 28, 2010.

¶ 95     During her closing argument, defendant's trial counsel noted that the jury would receive a copy of the court order sentencing defendant to 24 months' probation with a condition of "120 Days Cook County Day Reporting." Also, that the jury would receive a copy of the one-page "Cook County Sheriff's Office Participant Contract" as described by the majority. Rogers' trial counsel argued that a violation of the trial court's sentence of "120 Days Cook County Day Reporting" was a probation violation, not a violation of the electronic monitoring conditions. Consequently, the jury should find Rogers not guilty of escape.

¶ 96     The participant contract begins: "You have been court ordered to participate in the Cook

-20-

County Sheriff's Electronic Monitoring Program in lieu of being detained in the Cook County Department of Corrections, and do hereby agree to abide by the conditions of the Monitoring Program." The first condition provides: "You agree to remain within the interior premises of your residence twenty-four hours per day unless Sheriff's Office Personnel have granted prior approval of an absence." Rogers initialed this condition. The contract also provided: "You understand that violation of the program's conditions may result in a warrant being issued for your arrest for [the] crime of escape under 730 ILCS 5/5-8A-4.1." Rogers acknowledged his understanding of this provision by initialing it.

¶ 97    Article 8A is titled "Electronic Home Detention Law." Subsection 5-8A-2, "Definitions," provides in pertinent part:

"(C) 'Home detention' means the confinement of a person convicted or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority.

(D) 'Participant' means an inmate or offender placed into an electronic monitoring program.

(E) 'Supervising authority' means the Department of Corrections, probation supervisory authority, sheriff, superintendent of municipal house of corrections or any other officer or agency charged with authorizing and supervising home detention." 730 ILCS 5/5-8A-2 (West 2008).

Subsection 5-8A-3, "Applications," provides:

"A person serving a sentence for conviction of a Class 2, 3 or 4 felony offense which is not an excluded offense may be placed in an electronic home detention program pursuant to Department administrative directives.

(f) Applications for electronic home detention may include the following:
        ***
        (2) probation[.]" 730 ILCS 5/5-8A-3 (West 2008).

¶ 98    In his supplemental brief, defendant concedes "Moreover, the statute governing the terms and conditions of probation specifically confers on the court the authority to require a defendant to serve a term of home confinement, coupled with electronic home monitoring, if the court deems it to be necessary. 730 ILCS 5/5-6-3(b)(10)(iii)."

¶ 99    The majority acknowledge all of the above, including that "[t]he supervising authority, which specifically includes the sheriff, may develop reasonable guidelines for the operation of its electronic home detention program." *Supra* ¶ 36.

¶ 100    The majority briefly discuss the holdings in *People v. Beachem*, 229 Ill. 2d 237 (2008), and *People v. Campa*, 217 Ill. 2d 243 (2005). However, the majority conclude that, "Insofar as the parties have not addressed the relationship between section 31-6 of the Criminal Code [(Escape)] and section 5-8A-4.1 of the Electronic Home Detention Law, we are not inclined to address this issue further." *Supra* ¶ 48. This is regrettable as I believe that this issue is also dispositive of this appeal, as is defendant's forfeiture due to filing an inadequate record.

¶ 101    As the majority acknowledge, the defendant in *Beachem* was placed on the day reporting program by the Cook County sheriff pursuant to his authority under a federal consent decree

and not as a condition of pretrial bond or a sentence by a court, as in the instant case. In spite of this lack of a judicial order, the supreme court held that a defendant who violated a condition of the program could be prosecuted under section 31-6 of the Criminal Code. Section 31-6 provides, in pertinent part:

> "(a) A person convicted of a felony *** who knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony." 720 ILCS 5/31-6(a) (West 2008).

¶ 102    *Beachem* pointed out:

> "[I]n *People v. Simmons*, 88 Ill. 2d 270 (1982), this court held that a defendant who failed to return to the Peoria County Correctional Center from an unsupervised six-hour shopping trip was in custody and could be prosecuted for escape. In reaching this conclusion the court reasoned that '[h]owever much the limits of his confinement were temporarily enlarged, or the restrictions on his conduct temporarily lessened, he was still legally in the custody of the Center, and had a legal duty to submit to that custody.' *Simmons*, 88 Ill. 2d at 273. Thus, in *Simmons*, this court found that it was the legal duty to submit to custody and not the actual physical confinement, or lack thereof, which defined a defendant's custodial status." *Beachem*, 229 Ill. 2d at 252.

The court explained that as a participant in the day reporting program, "as in *Simmons*, he still remained under the legal custody of the sheriff and had a legal duty to submit to that authority at any time and for any reason." *Beachem*, 229 Ill. 2d at 253.

¶ 103    In *Simmons*, the defendant had argued that when he failed to return from his six-hour furlough, he should have been prosecuted under section 3-6-4(a) of the Unified Code of Corrections, which specifically provided that: " 'a committed person who fails to return from furlough or from work and day release is guilty of a Class 3 felony' " (*Simmons*, 88 Ill. 2d at 271 (quoting Ill. Rev. Stat. 1977, ch. 38, ¶ 1003-6-4(a))), rather than section 31-6 of the Criminal Code, a Class 2 felony. The supreme court rejected this argument, holding: "There is no inconsistency between the two escape provisions, and no reason to read either as creating any exception to the other. They simply express different, but harmonious, legislative concerns. *** To vindicate all the interests that must be protected, the State must be able to prosecute under either statute as it chooses. *** [T]he coexistence of the two statutes could be justified on the ground that the legislature wanted to give prosecutors and juries a choice. (See *People v. Brooks* (1976) 65 Ill. 2d 343.)" *People v. Simmons*, 88 Ill. 2d at 275-76.

¶ 104    *People v. Marble*, 91 Ill. 2d 242, 245 (1982), also mentioned in *Beachem*, applied the holding in *Simmons* to a defendant who was "serving a term with a provision for work release at the Chicago Work Release Center of the Cook County Department of Corrections," the predecessor to the day reporting program. The defendant was required to return to the jail by 8 p.m. and failed to do so. The supreme court affirmed Marble's conviction under section 31-6 but reversed his conviction under section 3-6-4(a) as violative of the one-act, one-crime provision in *People v. King*, 66 Ill. 2d 551, 566 (1977).

¶ 105    The provisions of section 3-6-4(a) addressing failure to return from furlough or from work or day release programs were moved to section 31-6 pursuant to Public Act 83-248,

-22-

effective January 1, 1984. Public Act 89-647, effective January 1, 1997, added the phrase "or who knowingly fails to abide by the terms of home confinement" to section 31-6(a). That same public act enacted section 5-8A-4.1, "Escape; failure to comply with a condition of the electronic home monitoring detention program," which provides in pertinent part:

"(a) A person *** convicted of a felony *** conditionally released from the supervising authority through an electronic home monitoring detention program, who knowingly violates a condition of the electronic home monitoring detention programs is guilty of a Class 3 felony." Pub. Act 89-647 (eff. Jan. 1, 1997) (adding 730 ILCS 5/5-8A-4.1).

¶ 106     *People v. Campa*, 217 Ill. 2d 243, 259 (2005), also mentioned in *Beachem*, discussed the above legislative history in explaining:

"The escape statute shows that the legislature intended the crime of escape to evolve with the changing terms of detention used as part of the programs at our correctional institutions. A defendant must necessarily be in 'custody' while participating in these programs if he is to be held accountable for 'escape' for failure to comply with the terms of the programs."

¶ 107     Other examples of the "changing terms of detention used as part of the programs at our correctional institutions" are section 5-7-1(b)(8) "Sentence of Periodic Imprisonment," which provides that among the conditions to be determined by the sheriff included residing at home with an electronic monitoring program; section 5-8-1.2, "County Impact Incarceration"; and section 5-8-1.3, "Pilot residential and transition treatment program for women." All of these programs subject their participants to conditions amounting to "custody." The majority's decision in this case calls into question whether individuals who participate in these programs may be held accountable for violating the conditions of any given program. Without this ability, courts, probation departments, sheriffs and other "supervising authorities" may well choose to shut down these very beneficial programs.

¶ 108     As pointed out by the majority, and conceded by the defendant on appeal, failure of a defendant to comply with a condition of a probation sentence imposing home confinement and/or electronic monitoring may also result in a prosecution under section 5-6-4, "Violation, Modification, or Revocation of Probation," which may result in a sentence of imprisonment. In the instant case, the defendant concedes that he was sentenced to the day reporting program as a condition of his probation sentence and that he failed to comply with the requirements of the day reporting program. As he did before the trial court, defendant argues before us that the State could only proceed against him by way of filing a violation of probation. The holdings in *Beachem*, *Campa*, *Simmons* and *Marble* make it abundantly clear that the State's Attorney's office has the discretion as to which charges, if any, will be brought against a defendant who has violated a condition of the day reporting program or any other program in which convicted criminals are ordered to participate.

¶ 109     Defendant relies heavily on *People v. Saucier*, 221 Ill. App. 3d 287, 291-92 (1991), for the proposition that "it is important that there be a definite, memorialized understanding of what is required of defendant." The *Saucier* court held that the defendant's conduct in approaching the victim in the underlying case did not violate any condition of his probation

but the State could have prosecuted the defendant for violating the terms of his periodic imprisonment sentence under section 5-7-2 of the Unified Code of Corrections. Ill. Rev. Stat. 1989, ch. 38, ¶ 1005-7-2 (now 730 ILCS 5/5-7-2 (West 2008)). The appellate court remanded the case so the circuit court could determine the issue of the violation of defendant's periodic imprisonment sentence. *Saucier* supports the State's decision to proceed against defendant for violating section 5-8A-4.1 rather than through a violation of probation.

¶ 110    The majority characterize Officer Walker's testimony as being "either the electronic monitoring program and the day reporting 'work side by side,' which denotes that they operate independently of each other, or he testified that electronic monitoring was a condition of the day reporting program." *Supra* ¶ 76. The phrase "side by side" does not denote that they operate independently of each other; it indicates that the defendant had to comply with both requirements. The statutes quoted above show that an order imposing home confinement may also impose a requirement of electronic home detention monitoring. Further, as explained in *Simmons*, even if the two programs operate independently of each other, they may both be enforced. *Simmons*, 88 Ill. 2d at 276-77.

¶ 111    The majority also assert: "The State relies on one inartful phase in Robert's testimony to establish that day reporting is a condition of the electronic monitoring program: '[t]o be monitored by home electronic monitoring it's mandatory he reports to us by 8 a.m. Monday through Friday.' However, we find that interpretation of Robert's testimony to be unreasonable. Rather, it supports the opposite proposition." *Supra* ¶ 79. I completely disagree with the majority's strained interpretation. Further, which inferences should be drawn from testimony is properly determined by the trier of fact, who saw and heard the witnesses and was "in a much better position than are we to determine their credibility and the weight to be accorded their testimony." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009).

¶ 112    The very first condition listed and initialed by defendant in the Cook County sheriff's office participant contract reads: "You agree to remain within the interior premises of your residence twenty-four hours a day unless Sheriff's Office Personnel have granted prior approval of an absence." The majority seem to hold that the defendant's admitted failure to attend the day reporting program cannot be prosecuted as a "failure to comply with a condition of the electronic home monitoring detention programs," because the words "Day Reporting Program" do not appear in the participant contract.

¶ 113    The majority hold that the trial court erred in giving IPI Criminal 4th Nos. 22.76 and 22.77, "Definition of Escape–Failure to Comply With A Condition Of Electronic Home Monitoring Detention Program," and "Issues in Escape–Failure to Comply With a Condition of Electronic Home Monitoring Detention Program." IPI Criminal 4th No. 22.77 reads in pertinent part:

   "To sustain the charge of escape, the State must prove the following propositions:

   *First proposition*: That the defendant was convicted of a felony; and

   *Second proposition*: That the defendant was conditionally released from a supervising authority through an electronic home monitoring detention program; and

   *Third proposition*: That the defendant knowingly violated a condition of the electronic home monitoring detention program by failing to report to day reporting as

required."

¶ 114    The majority hold that: "[I]n this case, the court did not instruct the jury that it should first determine whether the State proved its assertion that reporting to the Day Reporting program was a condition of the Electronic Monitoring program." *Supra* ¶ 66. For support for this proposition, the majority cite *People v. Mohr*, 228 Ill. 2d 53, 67-68 (2008).

¶ 115    In *Mohr*, the defendant had been charged with first-degree murder but was convicted only of second-degree murder. The appellate court reversed and remanded for a new trial based on an evidentiary error. The defendant was retried only for second-degree murder. The supreme court noted that, "Because of the structure of our murder statutes and the posture of this case on remand after the first appeal, the trial court, the State, and the defendant clearly were in a vexing situation." *People v. Mohr*, 228 Ill. 2d at 69. This was because our homicide statutes provide that in order to convict a person of second-degree murder, the State must first prove the defendant guilty of first-degree murder *and* either the defendant was operating under a sudden and intense passion resulting from serious provocation by the individual killed *or* defendant was acting under an unreasonable belief that he was justified in killing the victim in self-defense. See 720 ILCS 5/9-2(a)(1), (2) (West 2008) (second degree murder).

¶ 116    The supreme court held:

"The proper approach was implicit in IPI Criminal 4th Nos. 7.01S and 7.02S. The judge did not have to inform the venire or the jury that defendant was charged with 'acting under a sudden and intense passion.' The judge should have stated only that the State alleged the defendant committed second degree murder by stabbing and choking Sutton, knowing that his acts created a strong probability of death or great bodily harm. That language precisely tracks the definition and issues instruction the jury would later receive and states only the elements the jury would be required to find." *People v. Mohr*, 228 Ill. 2d at 69.

¶ 117    *Mohr*'s holding that the trial court erred in not giving mandated pattern instructions and reversing the case for a new trial does not support the majority's holding in the instant case, which outright reverses defendant's conviction even though the trial court gave the proper instructions as mandated by the IPI. Nor do the majority spell out what instructions our trial courts should use in place of IPI Criminal 4th No. 22.76 and No. 22.77, which the majority hold to be erroneous.

¶ 118    The only proposition of IPI Criminal 4th No. 22.77 which was contested at trial was whether "defendant knowingly violated a condition of the electronic home monitoring detention program by failing to report to day reporting as required." It is abundantly clear that defendant knew that he had to report to the day reporting program. In addition to signing the probation order containing the condition of "120 Days Day Reporting Program," Officers Roberts and Walker testified as to their conversations with defendant and the fact that he signed the "Participation Contract," which provided that he agreed "to remain within the interior premises of your residence twenty-four hours per day unless Sheriff's Office Personnel have granted prior approval of an absence." Further, defendant absconded on the eleventh day he was required to report, not the first.

¶ 119    For the above reasons, I would affirm defendant's conviction of escape for failure to comply with a condition of the electronic home monitoring detention program.